



★ ★ ★          ★ ★ ★

# OPINION

No. 04-09-00095-CV

Kenneth **WARDLAW**, Individually and on Behalf of the Estate of Gwendolyn Elizabeth
Wardlaw, Deceased, and as Next Friend of John Moore,
Appellant

v.

**TEXAS DEPARTMENT OF TRANSPORTATION,**
Appellee

From the 216th Judicial District Court, Kerr County, Texas
Trial Court No. 06-866-A
Honorable Stephen B. Ables, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:        Sandee Bryan Marion, Justice
                Rebecca Simmons, Justice
                Marialyn Barnard, Justice

Delivered and Filed: November 25, 2009

AFFIRMED

This is an appeal from the trial court's granting of appellee's plea to the jurisdiction and

motion for summary judgment. We affirm.

## BACKGROUND

The Texas Department of Transportation ("TxDOT") owns and operates a low water crossing

where FM 1350 crosses over the Guadalupe River (hereinafter "Government Crossing").

Government Crossing consists of three man-made box culverts that divert water under the road, which is paved over the culverts. In the days leading up to July 3, 2004, the area experienced persistent rain that led to flooding of area roads and a rise in the river's water level. On July 3, 2004, Gwendolyn Wardlaw, her husband, and two friends were floating down the Guadalupe River on inner tubes. As the group approached Government Crossing, Ms. Wardlaw and her two friends were sucked into the box culverts. Although the friends made it through to the other side of the culverts, tragically, Ms. Wardlaw was trapped in debris that blocked one of the culverts and she drowned. The underlying lawsuit was brought against TxDOT by Kenneth Wardlaw ("Wardlaw") individually, as representative of Ms. Wardlaw's estate, and as next friend of John Moore.

In his petition, Wardlaw alleged TxDOT was grossly negligent when it failed to remedy the defect on its premises and for not warning of the dangerous condition created by the low water crossing. Wardlaw based this contention on his allegation that TxDOT "failed to install grates to cover the underpass of the bridge, remove the debris which it allowed to accumulate in its crossing," and failed to post warning signs. Wardlaw also alleged the condition was a special defect. TxDOT filed a combined plea to the jurisdiction and motion for summary judgment on Wardlaw's premise defect and special defect claims. The trial court granted TxDOT's plea and motion for summary judgment, without stating its grounds. On appeal, Wardlaw raises two issues: (1) TxDOT waived its immunity for the premise defect claim and (2) TxDOT waived its immunity for the special defect claim.

**STANDARD OF REVIEW**

A challenge to a trial court's subject matter jurisdiction may be raised in a plea to the jurisdiction or in a motion for summary judgment. *State v. Lueck,* 290 S.W.3d 876, 884 (Tex. 2009). Because TxDOT challenged the trial court's subject matter jurisdiction in both a plea to the jurisdiction and a motion for summary judgment, we apply the appropriate standard of review for both. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-28 (Tex. 2004) (standard of review for plea to the jurisdiction); TEX. R. CIV. P. 166a(c) (standard of review for traditional summary judgment). Whether a court has subject matter jurisdiction is a question of law, which we review *de novo*. *Miranda*, 133 S.W.3d at 226.

**PREMISE DEFECT AND SPECIAL DEFECT CLAIMS**

A governmental entity is generally immune from suit unless the immunity is waived by the Texas Legislature. *City of Dallas v. Reed*, 258 S.W.3d 620, 622 (Tex. 2008). The Legislature has provided a limited waiver of immunity for tort claims arising from a condition or use of real property "if the governmental unit would, were it a private person, be liable to the claimant . . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (Vernon 2005). These claims may arise from either an ordinary premise defect or a special defect, depending upon the condition of the property. *See id.* § 101.022 (Vernon Supp. 2009). Whether a condition is a premise defect or a special defect is a question of law. *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 238 (Tex. 1992) (op. on reh'g).

## A.      Premise Defect Claim - Actual Knowledge

In its motion for summary judgment, TxDOT argued Wardlaw's premise defect claim and gross negligence claim fail because Wardlaw did not establish TxDOT had actual knowledge of the presence of debris under the bridge at the time of Ms. Wardlaw's accident.  On appeal, Wardlaw briefs all the elements of a premise defect claim, but we confine our discussion to only actual knowledge because that is the sole element challenged by TxDOT in its motion for summary judgment.

When there is an ordinary premise defect, the duty owed by the governmental unit is the same duty owed by a private landowner to a licensee, which requires a landowner not to injure a licensee by willful, wanton or grossly negligent conduct and to use ordinary care to warn or make reasonably safe a dangerous condition of which the owner has actual knowledge and of which the licensee is not aware.  *Payne*, 838 S.W.2d at 237; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(a). "Actual knowledge requires knowledge that the dangerous condition existed at the time of the accident, as opposed to constructive knowledge which can be established by facts or inferences that a dangerous condition could develop over time." *City of Corsicana v. Stewart*, 249 S.W.3d 412, 414-15 (Tex. 2008).  Circumstantial evidence may establish actual knowledge "when it 'either directly or by reasonable inference' supports that conclusion." *Id.* at 415 (citations omitted).

TxDOT does not dispute that it knew (1) the Guadalupe River was frequented by people floating on inner tubes, such as Ms. Wardlaw; (2) people were likely to be in the river at the crossing over the Fourth of July weekend, when this accident occurred; and (3) people in the river would encounter low water crossings, including Government Crossing.  However, none of this evidence

goes to knowledge of the dangerous condition at the time of the accident. In his response to TxDOT's motion for summary judgment, Wardlaw relied on the following: (1) Troy Witt, a TxDOT employee, testified he and his crew pulled debris from Government Crossing, but he did not state any specific date for having done so; (2) Michael Crawford, a TxDOT area engineer, testified the crews removed debris "many times" and the "potential exists for debris to be stuck in box culverts during floods"; (3) John Kilgore, a TxDOT structural engineer, acknowledged that some crossings had a tendency to collect debris; and (4) Government Crossing had a tendency to collect debris. Witt also testified that on July 3, 2004, records showed about one foot of water over FM 1350 at approximately 11:00 a.m., and because of flooding, the road was closed. Finally, Wardlaw's expert, David Steitle, stated in his affidavit that "the State regularly closed Government Crossing during periods of heavy rainfall . . . . [and he knew] that the State of Texas also closes those crossings from time to time because of debris which occludes the water flow." Although the record does not contain the exact time of Ms. Wardlaw's death, Wardlaw asserts (and TxDOT does not dispute) that she was caught in the debris and drowned some time in the afternoon of July 3, 2004.

We must conclude Wardlaw did not meet his burden of proof on whether TxDOT had actual knowledge the culverts were clogged with debris *at the time of the accident*. The evidence establishes, at most, that FM 1350 was closed to traffic because of water on the road and Government Crossing tended to become clogged with debris during heavy rainfall. The record indicates three feet of water over Government Crossing on June 30, 2004, and one foot of water over the crossing on July 3, 2004. But, no evidence was offered showing TxDOT knew the crossing was clogged on July 3, 2004. Also, evidence that FM 1350 was covered in water at 11:00 a.m. on July

3rd does not necessarily mean all three of the culverts were clogged with debris at that time or later in the day. Michael Crawford testified it was not possible to know if water over the road was caused by debris inside the culvert or by the flow of the river pushing water over the road. One of Ms. Wardlaw's friends testified that at the time of the accident the water level of the river was "under the bridge" and the water was "very calm." Accordingly, we affirm the summary judgment in favor of TxDOT on Wardlaw's premise defect and gross negligence claims.[1]

**B.      Special Defect**

In TxDOT's plea to the jurisdiction as to Wardlaw's special defect claim, TxDOT argued Wardlaw's special defect claim fails because the condition was not, as a matter of law, an excavation or obstruction located on a roadway and Ms. Wardlaw was not an ordinary user of the roadway because she was not on FM 1350 at the time of the accident.

In a special defect liability claim, the duty owed by the governmental unit is that owed by a private landowner to an invitee, which requires an owner to use ordinary care to reduce or eliminate unreasonable risks of harm of which the owner is aware or reasonably should be aware. *City of Dallas,* 258 S.W.3d at 622. The Tort Claims Act does not define "special defect" but, instead, "likens it to 'excavations or obstructions' that exist 'on' the roadway surface." *Denton County v. Beynon*, 283 S.W.3d 329, 331 (Tex. 2009); TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(b).

---

[1] Because we conclude Wardlaw did not establish TxDOT had actual knowledge, we do not address TxDOT's alternative argument, made in its plea to the jurisdiction, that its immunity from suit is not waived regarding its failure to install grates or guards to block debris from accumulating under the bridge because a decision to install such safety features is discretionary; nor do we address TxDOT's alternative argument, made in its motion for summary judgment, that Wardlaw's petition did not allege TxDOT had actual knowledge of the presence of debris under the bridge at the time of Ms. Wardlaw's accident.

TxDOT relies on *Payne* for its argument that a special defect must be on the roadway and must constitute an unexpected danger to the ordinary user of the roadway. *See Payne*, 838 S.W.2d at 239 (holding that end of culvert into which plaintiff fell "was located far enough from the paved surface that vehicular passengers and other normal users of the roadway were unlikely to encounter it."). According to TxDOT, *Payne* specifically limited special defects to excavations or obstructions on or near roadways. TxDOT contends Ms. Wardlaw was not on FM 1350; she was floating on the river as it passed under the roadway; and only someone such as Ms. Wardlaw, floating on the river, was likely to be sucked into the culvert and drown while entangled in any debris caught in the culvert.

The Texas Supreme Court has stated as follows:

> . . . This Court has never squarely confronted whether a hazard located off the road can (or can never) constitute a special defect, though we did note in *Payne* that some courts of appeals have held certain off-road conditions to be special defects. However, as *Payne* clarified, "[w]hether on a road or near one,' conditions can be special defects like excavations or obstructions 'only if they pose a threat to the ordinary users of a particular roadway."

*Beynon*, 283 S.W.3d at 331 (quoting *Payne*, 838 S.W.2d 238 n.3). In *Beynon*, the plaintiff moved his car to the far right side of the road, which had a steep pavement edge drop-off, because he saw an oncoming vehicle approaching in the middle of the road. *Id.* at 330. The car's right-side tires left the asphalt, dropping "around eight inches" off the edge and into some loose gravel and grass. *Id.* The car briefly climbed back onto the road, but the driver lost control, and the car slid sideways into the grass where it was punctured by a seventeen-foot floodgate arm owned and maintained by Denton County. The metal floodgate arm was unsecured and improperly pointed toward oncoming traffic, with the tip of the arm about three feet from the edge of the roadway. The floodgate arm

pierced the driver's side door, entered the backseat area where it severely injured a child's leg, and then passed through the floorboard beneath the child's seat. *Id.* at 330-31. The Supreme Court held the floodgate arm did not pose a threat to the ordinary users of the road or "prevent ordinary users from traveling on the road (as opposed to skidding off the road)." *Id.* at 332.

Both in *Payne* and *Beynon*, the Supreme Court indicated the dangerous condition must pose a threat to *users of a roadway*. In this case, Ms. Wardlaw was not a user of any roadway. Because the condition of the culverts did not pose a threat to ordinary users of a particular roadway, we conclude it "falls outside the [Tort Claims Act's] narrow special-defect class as a matter of law." *See* Beynon, 283 S.W.3d at 332. Accordingly, we affirm the plea to the jurisdiction in favor of TxDOT on Wardlaw's special defect claim.

## CONCLUSION

For these reasons, we overrule all issues on appeal and affirm the trial court's judgment.

Sandee Bryan Marion, Justice