# IN THE SUPREME COURT OF TEXAS

══════════
No. 11-0437
══════════

TEXAS DEPARTMENT OF TRANSPORTATION, PETITIONER,

v.

JOSE LUIS PERCHES, SR. AND ALMA DELIA PERCHES, INDIVIDUALLY
AND ON BEHALF OF THE ESTATE OF JOSE LUIS PERCHES, JR., DECEASED,
RESPONDENTS

═══════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS
═══════════════════════════════════════════

**PER CURIAM**

In *State Department of Highways & Public Transportation v. Payne*, 838 S.W.2d 235 (Tex. 1992), we considered whether an off-road condition can be a special defect for which the State's sovereign immunity is waived under the Texas Tort Claims Act. We noted that "[w]hether on a road or near one . . . conditions can be 'special defects . . .' only if they pose a threat to the ordinary users of a particular roadway." *Payne*, 838 S.W.2d at 238–39 n.3. In this special defect case involving a concrete guardrail, we conclude that such barriers are generally not conditions posing a threat to ordinary users of a particular roadway. Accordingly, we reverse in part and affirm in part the court of appeals' judgment, render judgment dismissing the claims brought under the Texas Tort Claims Act, and remand the case to the trial court for further proceedings.

Jose Perches was killed while navigating the "Bicentennial Underpass" in McAllen. The underpass has a ramp from the westbound lanes of U.S. Highway 83 to a bridge crossing over the highway. At the end of the ramp, a "T-intersection" directs west-bound drivers left onto Bicentennial Boulevard. Perches crashed into a concrete barrier while attempting to make the left turn. His car went over the edge and fell more than twenty feet to the roadway below.

Perches's parents sued the Texas Department of Transportation (TxDOT) and several engineering firms, alleging negligent maintenance and implementation of the roadway and traffic control devices. The Percheses also sought to permanently enjoin TxDOT from re-opening the underpass. The trial court denied TxDOT's immunity-based jurisdictional plea and severed the Percheses' causes of action against TxDOT from those asserted against the engineering firms. This interlocutory appeal ensued. *See* TEX. R. APP. PROC. 28.1; *see also* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8), 101.001(3)(B). The court of appeals affirmed, concluding that although the Percheses had not shown an immunity waiver for their negligent maintenance and implementation claims, they pleaded sufficient facts to demonstrate TxDOT's waiver of immunity with respect to their special defect claims. 339 S.W.3d 241, 259. The court also concluded that TxDOT failed to preserve its argument that the trial court lacked jurisdiction to grant the Percheses' requested permanent injunction. *Id*. TxDOT petitioned this Court for review.[1]

\* \* \*

---

[1] The parties did not raise before this Court any issue related to jurisdiction over injunctive relief.

We generally lack jurisdiction over interlocutory appeals. TEX. GOV'T CODE § 22.225(b)(3). However, an exception exists when a court of appeals holds differently from another court of appeals or the Supreme Court. *Id.* § 22.225(c); § 22.001(a)(2); *City of San Antonio v. Ytuarte*, 229 S.W.3d 318, 319 (Tex. 2007) (per curiam). The Government Code provides that a court of appeals "holds differently" from another when "there is inconsistency in their respective decisions that should be clarified to remove unnecessary uncertainty in the law and unfairness to litigants." TEX. GOV'T CODE § 22.001(e); § 22.225(e).

This case creates a conflict among the courts of appeal as to whether a guardrail constitutes a special defect. In *Barron v. Texas Department of Transportation*, the plaintiff swerved to miss a stalled vehicle, causing the plaintiff's car to crash through the guardrail and fall into the creek below. 880 S.W.2d 300, 301 (Tex. App.—Waco 1994, writ denied). The court held that the bridge did not constitute a special defect. *Id.* at 303. Several other courts of appeal have rejected the guardrail-as-special-defect argument. *See State Dept. of Transp. v. Barraza*, 157 S.W.3d 922, 928 (Tex. App.—El Paso 2005, no pet.) (holding that the height of guardrails is a discretionary function for which TxDOT retains immunity); *Schafer v. Tex. Dep't of Transp.*, No. 03-01-00560-CV, 2003 WL 21467077, at *1 (Tex. App.—Austin 2003, no pet.) (mem. op.) (holding that "the placement or lack of a guardrail is not a special defect as contemplated by the Act"). Here, however, the court of appeals held that the concrete barrier was a special defect, and thus TxDOT's immunity was waived. 339 S.W.3d at 258. This conflict gives us jurisdiction over TxDOT's appeal.

\* \* \*

3

Generally, the State retains sovereign immunity from suit. *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 115 (Tex. 2010) (per curiam) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004)). Sovereign immunity is waived only if the Legislature uses "clear and unambiguous language." TEX. GOV'T CODE § 311.034. The Texas Tort Claims Act (the Act) limits the State's liability for premise defects to dangerous conditions of which it is aware. TEX. CIV. PRAC. & REM. CODE §§ 101.002 *et seq.*; § 101.022(a); *see also Payne*, 838 S.W.2d at 237. However, this limitation does not apply to "special defects such as excavations or obstructions on highways, roads, or streets." *Id.* § 101.022(b). When a special defect exists, the government owes the same duty to users that a private landowner owes to an invitee. *Payne*, 838 S.W.2d at 237. Whether a condition is a special defect is a question of law that we review de novo. *Denton County v. Beynon*, 283 S.W.3d 329, 331 (Tex. 2009).

The Act does not define the term "special defect," but it likens it to "conditions 'such as excavations or obstructions on highways, roads, or streets.'" *Hayes*, 327 S.W.3d at 116 (quoting TEX. CIV. PRAC. & REM. CODE § 101.022(b)). A condition must therefore be in the same class as an excavation or obstruction on a roadway to constitute a special defect. *Beynon*, 283 S.W.3d at 331–32 (noting that "a court cannot 'classify as "special" a defect that is not like an excavation or obstruction on a roadway.'") (quoting *Payne*, 838 S.W.2d at 239 n.3). Further, we have observed that "the class of special defects contemplated by the statute is narrow." *Hayes*, 327 S.W.3d at 116.

We considered whether an off-road condition can be a special defect in *State Department of Highways & Public Transportation v. Payne*, 838 S.W.2d 235 (Tex. 1992). Payne was injured when he walked off the end of a culvert located about twenty-two feet from the road. *Payne*, 838 S.W.2d

4

at 236.  Analyzing the distance of the end of the culvert from the "paved surface" and noting the anomalous circumstances in which Payne was walking "perpendicular to the paved surface into [an] adjacent field," we held that the culvert was not a threat to ordinary users of the roadway, and thus was not a special defect.  *Id*. at 239.  But we recognized in a footnote that, "[w]hether on a road or near one . . . conditions can be 'special defects . . .' only if they pose a threat to the ordinary users of a particular roadway."  *Id*. at 238–39 n.3.

We again addressed off-road conditions in *Denton County v. Beynon*.  There, the driver lost control of his car, which slid sideways on the grass and was punctured by a floodgate arm.  *Beynon*, 283 S.W.3d at 330.  The floodgate arm, unsecured and improperly pointed toward traffic, was located about three feet from the roadway.  *Id*. at 330–31.  We held that the arm did not pose a threat to an ordinary user of the road, who "would not be expected to careen uncontrollably off the paved roadway."  *Id*. at 332.

Special defect jurisprudence rests on the "objective expectations of an 'ordinary user.'"  *Beynon*, 283 S.W.3d at 332.  In *Beynon*, the floodgate arm did not force the car from the road, nor did it cause the car to skid.  *Id*.  The arm was outside "the [Act's] narrow special defect class as a matter of law" because it "did not 'pose a threat to the ordinary users . . . or prevent ordinary users from traveling on the road.'"  *Id*.

* * *

The court of appeals in this case held that the concrete guardrail was a special defect because it constituted an obstruction, impeding the ability of vehicles to make a safe left turn due to the narrowness of the intersection.  339 S.W.3d at 256–57.  The court pointed to several facts supporting

5

its conclusion: (1) the Bicentennial Underpass ramp "abruptly ends"; (2) the lack of signage indicating that drivers could only turn left; and (3) the possibility that lighting was insufficient, as multiple accidents have occurred at the intersection between midnight and 4:00 A.M. *Id*. at 258. However, the "[d]esign of any public work, such as a roadway, is a discretionary function involving many policy decisions, and the governmental entity responsible may not be sued for such decisions." *State v. Rodriguez*, 985 S.W.2d 83, 85 (Tex. 1999) (per curiam), *overruled on other grounds by Beynon*, 283 S.W.3d at 331 n.11.

The statute likens special defects to "excavations or obstructions on the roadway." TEX. CIV. PRAC. & REM. CODE § 101.022(b). "Obstruction" is defined as "[s]omething that impedes or hinders." BLACK'S LAW DICTIONARY 1183 (9th ed. 2009). Here, the concrete guardrail became an impediment only when Perches missed his turn and proceeded off the road and therefore does not pose a risk to ordinary users of the road. Had Perches made the turn in accordance with the roadway's design, he would never have come into contact with the guardrail.

The normal course of travel on the portion of the Bicentennial Underpass used by Perches is to turn left and proceed south on Bicentennial Boulevard. 339 S.W.3d at 243. The concrete guardrail is located at the end of a T-intersection, and its function is to prevent cars from falling off the underpass. *Id*. The lanes are neither unfinished nor unmarked, and the concrete guardrail was part of the initial design. *Id*. at 257. An ordinary user of the roadway would not be expected to miss a turn and crash through a concrete guardrail. The guardrail here does not impede travel or otherwise "block" the road for an ordinary user in the normal course of travel, but rather, in accordance with its intended purpose, delineates the roadway's bounds. *See Beynon*, 283 S.W.3d at 332; *see also*

6

*Hayes*, 327 S.W.3d at 116–17. Guardrails, by their nature, define the roadway, they do not impede it. We therefore hold that guardrails placed in accordance to plan cannot constitute a special defect under the Act.

* * *

The Percheses also argue that if the Bicentennial Underpass is not a special defect, then it must be an ordinary premise defect for which TxDOT owes the same duty a private landowner owes a licensee. TEX. CIV. PRAC. & REM. CODE § 101.022(a). We have stated that such duty "requires that a landowner not injure a licensee by willful, wanton, or grossly negligent conduct, and that the owner use ordinary care either to warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not." *Payne*, 838 S.W.2d at 237 (citing RESTATEMENT (SECOND) OF TORTS § 342 (1965)). We agree with the court of appeals that the Percheses have not pleaded sufficient facts demonstrating a waiver of immunity under the Act and that the trial court had jurisdiction with respect to their premise liability claims. 339 S.W.3d at 255. We affirm this portion of the court of appeals' judgment.

* * *

Accordingly, we grant the petition for review and, without hearing oral argument, we reverse in part and affirm in part the court of appeals' judgment, render judgment dismissing the Percheses' claims under the Texas Tort Claims Act, and remand the case to the trial court for further proceedings consistent with this opinion. TEX. R. APP. P. 59.1, 60.2(a), (c), (d).

**OPINION DELIVERED:** November 16, 2012

7