

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-16-00142-CV

Joseph **GONZALEZ**,
Appellant

v.

**BANDERA COUNTY**,
Appellee

From the 198th Judicial District Court, Bandera County, Texas
Trial Court No. CV-14-0000236
Honorable M. Rex Emerson, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Rebeca C. Martinez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  September 21, 2016

AFFIRMED

Joseph Gonzalez appeals the trial court's order granting Bandera County's plea to the jurisdiction.  Gonzalez was injured when he was thrown from his motorcycle while crossing a cattle guard on a public road.  If the cattle guard is a premises defect, Gonzalez contends he raised a fact issue regarding the trial court's jurisdiction over his premises defect claim.  Alternatively, Gonzalez contends the cattle guard was a special defect, and the evidence raised a fact issue regarding whether Bandera County breached the duty of care it owed Gonzalez as an invitee.  We affirm the trial court's order.

## BACKGROUND

In his second amended petition, Gonzalez alleged he was operating his motorcycle on Bump Gate Road on January 20, 2013. As he crossed a cattle guard, Gonzalez "lost control of his motorcycle and violently crashed." Bandera County was responsible for maintaining the cattle guard.

Gonzalez alleged the cattle guard posed an unreasonably dangerous risk of harm because an "unreasonably dangerous drop" exists when transitioning from the paved road to the cattle guard. In addition, Gonzalez alleged "the metal bars of the cattle guard were not welded together correctly resulting in a gap of one to three inches wide with sharp edges being exposed." Finally, Gonzalez alleged no signs warned of the approaching cattle guard.

Gonzalez filed the underlying suit against Bandera County and several other defendants. Bandera County filed a plea to the jurisdiction asserting immunity from suit. Gonzalez filed a response to the plea. After a hearing, the trial court allowed Bandera County to supplement its plea and also allowed Gonzalez to supplement his response. The trial court then signed an order granting Bandera County's plea. Gonzalez appeals.[1]

## SOVEREIGN IMMUNITY AND STANDARD OF REVIEW

Governmental units generally retain sovereign immunity from suit. *Tex. Dep't of Transp. v. Perches*, 388 S.W.3d 652, 654 (Tex. 2012); *City of San Antonio v. Peralta*, 476 S.W.3d 653, 656 (Tex. App.—San Antonio 2015, no pet.). The Texas Tort Claims Act, however, waives immunity from suit for personal injury caused by a condition of real property "if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV.

---

[1] In his brief, Gonzalez argues the trial court erred in granting the plea to the jurisdiction after it previously denied Bandera County's motion for summary judgment which contained identical challenges to the trial court's jurisdiction. Our review is limited to the trial court's order granting the plea to the jurisdiction. No procedural rule precluded Bandera County from filing a plea to the jurisdiction after its motion for summary judgment was denied.

PRAC. & REM. CODE ANN. § 101.021(2) (West 2011); *see also Suarez v. City of Tex. City*, 465 S.W.3d 623, 632 (Tex. 2015). More specifically, the Act waives immunity for tort claims arising from premises defects and special defects. *Id*. at § 101.022.

Sovereign immunity from suit defeats a trial court's subject matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). "Whether the court has subject matter jurisdiction is a question of law." *Id*. at 226. When, as in this case, "a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised." *Id*. at 227. If the evidence raises a fact question regarding the jurisdictional issue, the trial court cannot grant the plea. *Id*. at 227-28. "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id*. at 228. In reviewing the evidence, "we take as true all evidence favorable to the nonmovant," indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Id*.

### PREMISES DEFECT V. SPECIAL DEFECT

Gonzalez alternatively argues the cattle guard in this case was either a premises defect or a special defect. Because the duty owed by Bandera County is determined by the nature of the defect, we first address which type of defect the cattle guard potentially posed.

Whether a condition is a special defect is a question of law. *Perches*, 388 S.W.3d at 655; *City of Denton v. Paper*, 376 S.W.3d 762, 764 (Tex. 2012). "[T]he class of special defects contemplated by the statute is narrow." *Perches*, 388 S.W.3d at 655 (internal citations omitted). "The Act does not define the term 'special defect;'" however, it likens a special defect to a condition like an excavation or obstruction on a highway, road or street. *Id*.; TEX. CIV. PRAC. & REM. CODE § 101.022(b).

"*Webster's* defines an excavation as a cavity and an obstruction as an impediment or hindrance, but not every hole or hindrance is [a] special [defect]." *Reyes v. City of Laredo*, 335 S.W.3d 605, 607 (Tex. 2010) (internal citations omitted). "In determining whether a particular condition is like an excavation or obstruction and therefore a special defect, [the Texas Supreme Court has] mentioned several helpful characteristics, such as: (1) the size of the condition; (2) whether the condition unexpectedly and physically impairs an ordinary user's ability to travel on the road; (3) whether the condition presents some unusual quality apart from the ordinary course of events; and (4) whether the condition presents an unexpected or unusual danger." *City of Denton*, 376 S.W.3d at 765. The court also has considered the "normal course of travel" in evaluating a condition. *Perches*, 388 S.W.3d at 656.

Gonzalez alleges an "unreasonably dangerous drop" exists when transitioning from the paved road to the cattle guard. The evidence, however, did not establish an unreasonably dangerous drop. The Texas Supreme Court has held a two-inch drop-off is "not in the same kind or class as an excavation or obstruction," noting "there is nothing unusually dangerous about a slight drop-off between traffic lanes in the roadway." *City of Dallas v. Reed*, 258 S.W.3d 620, 622 (Tex. 2008). The court further explained, "Ordinary drivers, in the normal course of driving, should expect these slight variations on the road caused by normal deterioration." *Id.* Similarly, ordinary drivers should expect a variation when transitioning from a paved road to a cattle guard. Accordingly, the drop-off from the paved road to the cattle guard is not a special defect.

Gonzalez next alleges "the metal bars of the cattle guard were not welded together correctly resulting in a gap of one to three inches wide with sharp edges being exposed." The evidence, however, established that the gaps occurred only in the center of the cattle guard. In his affidavit, John Andrade, the Road and Bridge Superintendent in Bandera County, inspected the cattle guard after the accident. Although Andrade acknowledged four gaps existed between some of the lengths

of metal piping used to make the cattle guard, Andrade stated the gaps, which were around two inches wide were "in the center of the cattle guard." The following photographs of the cattle guard confirm Andrade's statement and show the gaps are in the center of the cattle guard which also places the gaps in the center of the two lane road and outside the normal path of traffic:



Based on the evidence, we hold the gap in the piping does not make the cattle guard a special defect. Because the gaps occur in the center of the road and a motorcyclist would not ordinarily drive down the center of the road in the normal course of travel, the condition does not impair an ordinary user's ability to travel on the road and does not present an unexpected and unusual danger. *See Perches*, 388 S.W.3d at 656; *City of Denton*, 376 S.W.3d at 765.

## PREMISES DEFECT

In an ordinary premises liability claim, "the governmental unit owes to the claimant only the duty that a private landowner owes to a licensee on private property." TEX. CIV. PRAC. & REM. CODE § 101.022(a). "Under Texas law, a licensor of real estate owes a duty not to injure the licensee by willful or wanton acts or omissions or gross negligence." *City of Denton*, 376 S.W.3d at 766. In addition, a licensor "must use ordinary care either to warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not." *City of Dallas*, 258 S.W.3d at 622. Gonzalez alleged the cattle guard posed an unreasonable risk of harm to him, Bandera County knew of the condition, but he did not know of the condition.

One of the jurisdictional facts challenged in Bandera County's plea to the jurisdiction was whether it had actual knowledge of the gaps in the cattle guard. "Actual knowledge rather than constructive knowledge of the dangerous condition is required." *State v. Tennison*, 509 S.W.2d 560, 563 (Tex. 1974). "[A]ctual knowledge requires the landowner to know that the dangerous condition existed at the time of the accident, not merely of the possibility that a dangerous condition could develop over time." *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 117 (Tex. 2010) (internal citations omitted). Hypothetical knowledge is not sufficient. *See id*. And, evidence the landowner could have done more to warn the licensee is not direct evidence to show the owner had actual knowledge. *See id*. at 117-18. "Although there is no one test for determining actual knowledge that a condition presents an unreasonable risk of harm, courts generally consider

whether the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition." *Univ. of Texas-Pan Am. v. Aguilar*, 251 S.W.3d 511, 513 (Tex. 2008).

In this case, Andrade stated in his affidavit that Bandera County had not received a report of a need to repair the cattle guard in question. In addition, Andrade stated no other accident involving the cattle guard had ever been reported. Gonzalez relies on a daily work history showing repairs to a cattle guard on Bump Gate Road; however, Gonzalez acknowledges two cattle guards existed on the road, and the daily work history does not identify which of those cattle guards was repaired. In addition, the fact that a cattle guard had been repaired on three dates in 2007,[2] two dates in 2008,[3] and two dates in 2012[4] is no evidence that Bandera County had actual knowledge there were gaps in the cattle guard on January 20, 2013, the day of Gonzalez's accident. This is particularly true since the daily work history does not detail the nature of the prior repairs or establish the repairs were undertaken after a written request or report of the need for a repair was made.[5] Even if the prior repairs supported an inference that the cattle guards might need repairs in the future, the possibility that a dangerous condition involving the cattle guards could develop over time is insufficient to show actual knowledge. *Univ. of Tex. at Austin*, 327 S.W.3d at 117. Accordingly, even assuming the gaps in the cattle guard posed a dangerous condition, the evidence established Bandera County did not have actual knowledge of the condition. Therefore, the trial court did not err in granting Bandera County's plea to the jurisdiction.[6]

---

[2] Because two of those dates were close in time, i.e., August 12, 2007 and August 14, 2007, this may have been one repair which required two days of repair work.

[3] These two dates were consecutive days, i.e., January 22, 2008 and January 23, 2008, and may have been related to one repair.

[4] These two dates were also close in time, i.e., June 15, 2012 and June 18, 2012.

[5] Andrade stated the landowner usually informs Bandera County of the need for repair but notice can come from other sources. There is no evidence in the record that the prior repairs were made after a written request for repair was received.

[6] Gonzalez also complains about Bandera County's reliance on his deemed admissions. Because we do not rely on any deemed admissions in our analysis, we need not address this issue. *See* TEX. R. APP. P. 47.1 (providing opinions should only address issues necessary to the final disposition of an appeal).

## CONCLUSION

The trial court's order is affirmed.

Rebeca C. Martinez, Justice