

## Fourth Court of Appeals
### San Antonio, Texas

### OPINION

No. 04-17-00091-CV

**TEXAS DEPARTMENT OF TRANSPORTATION**,
Appellant

v.

Hector R. **RAMIREZ**,
Appellee

From the 406th Judicial District Court, Webb County, Texas
Trial Court No. 2014CVT002640-D4
Honorable Oscar J. Hale, Jr., Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:       Patricia O. Alvarez, Justice
               Luz Elena D. Chapa, Justice
               Irene Rios, Justice

Delivered and Filed:  August 8, 2018

AFFIRMED

Hector R. Ramirez brought a premises liability action against the Texas Department of Transportation ("TxDOT") for injuries he sustained when his tractor-trailer tipped over after encountering an 8 ¾ inch drop-off on the edge of the roadway. After a jury found TxDOT's negligence caused the accident, the trial court entered an order awarding Ramirez $250,000 in damages. On appeal, TxDOT contends the trial court's judgment should be reversed because the drop-off was not a special defect and because the drop-off was an open and obvious condition.

Because we conclude the drop-off in this case was a special defect and was not open and obvious, we affirm the trial court's judgment.

## BACKGROUND

On March 20, 2014, Ramirez was driving a tractor-trailer and traveling southbound on U.S. Highway 83 ("US 83") carrying freight from Del Rio to Laredo. US 83 is a two-lane highway with paved nine-foot shoulders. As Ramirez neared a truck stop, he saw a tractor-trailer stopped in the same lane waiting to turn left into the truck stop. To avoid colliding with the stalled trailer, Ramirez slowed and downshifted. Because he was afraid he would not be able to come to a complete stop to avoid colliding with the stopped tractor-trailer, Ramirez maneuvered onto the shoulder of the roadway to go around the trailer. In the course of maneuvering around the stopped trailer via the shoulder, the front right tire of Ramirez's tractor trailer encountered an 8¾ inch drop-off at the edge of the paved shoulder between the shoulder and the ground. When Ramirez attempted to bring the tire back onto the pavement, the tire popped, causing Ramirez's tractor trailer to tip over, landing on its side.

During the jury trial, the jury heard testimony from Ramirez, Texas Highway Patrol Trooper Juarez, TxDOT Maintenance Supervisor Anastacio Cantu, and accident reconstructionist James Locke. Trooper Juarez, one of the officers who responded to the scene, testified that based on the circumstances of the crash, it appeared Ramirez safely attempted to get around the stopped truck. Trooper Juarez further testified that Ramirez's action in attempting to pass the stalled trailer to the right by going onto the shoulder was legal. Cantu testified TxDOT's maintenance manual instructs TxDOT employees regarding how to address highway drop-offs. Cantu explained that the manual instructs that three inches is the maximum depth at which a drop-off is acceptable, because a three-inch drop-off is a hazard that could cause an accident. Cantu agreed the drop-off where the accident occurred was a hazardous condition that needed to be addressed. Cantu

explained that the state has a scoring system for various aspects of the state's roads and highways, including the edges of the roadway. According to that scoring system, a "failed" roadway edge was one with a drop-off greater than four inches. Cantu explained that almost all drivers who encounter a drop-off of more than four inches can lose control of their vehicle and are at greater risk of having an accident. Cantu agreed that the drop-off encountered by Ramirez would be an unexpected condition on the shoulder of the roadway. Cantu testified that TxDOT crews conduct "windshield drives" wherein they inspect highway conditions, and that a TxDOT crew driving down US 83 could have seen the drop-off. Cantu further testified that ten days prior to the incident, a TxDOT crew was repairing potholes on the same stretch of the roadway where the drop-off was located; TxDOT personnel should have been able to see the drop-off while inspecting the roadway; and he as the TxDOT supervisor should have known about a drop-off of that size. Moreover, Cantu confirmed that as the TxDOT supervisor, he should have had policies and procedures in place so that he would have known about the drop-off.

Locke testified, "About every 21 minutes somebody runs off the roadway and they're either killed or very seriously injured. And oftentimes, it's because the pavement edge" has a drop-off. Locke explained a drop-off like the one in this case is a "defectively dangerous condition" because when the right side of a vehicle goes off the edge of a drop-off, drivers, in an effort to get back on the pavement, will steer too hard to the left, resulting in a loss of control of the vehicle. Although Locke testified that, had Ramirez applied maximum braking upon seeing the stalled trailer, he would have been able to stop behind the trailer, Locke explained that a tractor-trailer braking at maximum force in that situation could be dangerous and cause the trailer to jackknife. Locke explained that given the short amount of time Ramirez had to make the decision to brake, moving onto the shoulder to pass the truck on the right was a reasonable decision.

After receipt of evidence and testimony, the jury returned a verdict finding that TxDOT's negligence was a proximate cause of the accident, TxDOT was eighty percent responsible for the accident, and Ramirez had suffered damages in the amount of $402,500. Thereafter, the trial court entered a judgment awarding Ramirez $250,000 in damages, the maximum amount allowed under law. *See* TEX. CIV. PRAC. & REM. CODE §101.023(a) (limiting state government's liability for tort claims to $250,000 per person).

This appeal followed.

## SPECIAL DEFECT

In its first and second issues, TxDOT contends the trial court's judgment must be reversed because the drop-off was not a special defect as a matter of law and Ramirez failed to obtain a jury finding that TxDOT had actual knowledge of the drop-off. "Whether a condition is a special defect is a question of law that we review de novo." *Tex. Dep't of Transp. v. Perches*, 388 S.W.3d 652, 655 (Tex. 2012)

## Texas Tort Claims Act

"A governmental entity[1] is generally immune from suit unless the immunity is waived by the Texas Legislature." *Wardlaw v. Tex. Dep't of Transp.*, 307 S.W.3d 369, 371 (Tex. App.—San Antonio 2009). Under the Texas Tort Claims Act ("TTCA"), the legislature has waived immunity for tort claims arising from "personal injury . . . caused by a condition or use of . . . real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2). With regard to claims arising from a premises defect, a governmental entity "owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the

---

[1] TxDOT, as a state agency, is a governmental entity entitled to sovereign immunity. *See Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 620 (Tex. 2011) (per curiam).

premises." *Id.* at § 101.022(a). "However, this limitation does not apply to 'special defects such as excavations or obstructions on highways, roads, or streets.'" *Perches*, 388 S.W.3d at 654 (quoting § 101.022(b)). "When a special defect exists, the government owes the same duty to users that a private landowner owes to an invitee." *Id.* at 654-55. "Under a licensee standard, a plaintiff must prove that the governmental unit had actual knowledge of a condition that created an unreasonable risk of harm, and also that the [plaintiff] did not have actual knowledge of that same condition." *Tex. Dep't of Transp. v. York*, 284 S.W.3d 844, 847 (Tex. 2009) (per curiam). "Under an invitee standard, a plaintiff need only prove that the governmental unit should have known of a condition that created an unreasonable risk of harm." *Id.*

### What Constitutes a Special Defect?

"The TTCA does not define 'special defect' but likens it to 'excavations or obstructions' that exist 'on' the roadway surface." *Denton Cty. v. Beynon*, 283 S.W.3d 329, 331 (Tex. 2009). Thus, to constitute a special defect, the condition must "be in the same class as an excavation or obstruction on a roadway." *Perches*, 388 S.W.3d at 655; *see also Beynon*, 283 S.W.3d at 331 ("[A] court cannot 'classify as "special" a defect that is not like an excavation or obstruction on a roadway.'").

The Texas Supreme Court has observed that "[t]he class of special defects contemplated by the statute is narrow." *The Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010) (per curiam). To determine whether a condition is a special defect, the supreme court has "considered characteristics of the class of special defect, such as (1) the size of the condition, (2) whether the condition unexpectedly and physically impairs a vehicle's ability to travel on the road, (3) whether the condition presents some unusual quality apart from the ordinary course of events, and (4) whether the condition presents an unexpected and unusual danger to the ordinary users of the roadway." *Id.*

TxDOT argues the drop-off is not a special defect because it is not a condition located on the surface of the roadway and because it did not physically impair Ramirez's ability to travel on the roadway. Although the supreme court has not specifically determined "whether a hazard located off the road can (or can never) constitute a special defect," the supreme court has clarified that "'[w]hether on a road or near one,' conditions can be special defects like excavations or obstructions 'only if they pose a threat to the ordinary users of a particular roadway.'" *Beynon*, 283 S.W.3d at 331 (quoting *State Dep't of Highways & Public Transp. v. Payne*, 838 S.W.2d 235, 238 n.3 (Tex. 1992) (op. on reh'g)). When determining whether a condition poses a threat to ordinary users of a particular roadway, we consider "the objective expectations of an 'ordinary user' who follows the 'normal course of travel.'" *Hayes*, 327 S.W.3d at 116 (quoting *Beynon*, 283 S.W.3d at 332). "[T]he 'normal course of travel' [is] on the actual road." *Id.*

Courts have found that drop-offs at the edge of the roadway are special defects. In *Morse v. State*, the court held that a drop-off along the roadway shoulder[2] "posed an unusual or unexpected danger to the normal users of the roadway," and therefore was a special defect. 905 S.W.2d 470, 475 (Tex. App.—Beaumont 1995, writ denied). In that case, the Beaumont Court of Appeals considered the height of the drop-off—six to eight inches at the point the vehicle encountered the drop-off, and ten to twelve inches at its maximum depth; that the drop-off "tended to block the tires of a vehicle from reentering the traveled portion of the roadway"; and evidence that "even a three-inch drop-off should probably have been marked with a warning sign" and "a six-inch drop-off was a 'critical condition'" needing immediate repair. *Id.*; *see also Tex. Dep't of Transp. v. Dorman*, No. 05-97-00531-CV, 1999 WL 374167, at *3 (Tex. App.—Dallas June 10,

---

[2] Although the opinion at first characterized the drop-off as being "between the traffic lane and the shoulder," the opinion later refers to it as "a shoulder drop-off," and "the drop-off from the road shoulder." One witness who had previously had an accident upon encountering the drop-off described how he "slipped off the shoulder," and another witness described how his "left rear tire came off that shoulder."

1999) (mem. op., not designated for publication) (holding a four-inch drop-off between the travel lane and the shoulder was a special defect, noting TxDOT policy required warnings for a drop-off of more than three inches).

In contrast, the supreme court has held that conditions unconnected to the roadway or features that were designed to delineate the boundaries of the roadway are not special defects. In *Perches*, the supreme court held that a concrete guardrail was not a special defect where a driver crashed into the barrier when attempting to turn left onto a bridge. *See Perches*, 388 S.W.3d at 656. The court explained the concrete guardrail impeded the vehicle's movement "only when [the driver] missed his turn and proceeded off the road," and that "[h]ad [the driver] made the turn in accordance with the roadway's design, he would never have come into contact with the guardrail." *Id.* Accordingly, the guardrail "did not pose a risk to ordinary users of the road," and was not a special defect. *Id.* In *Beynon*, the supreme court held that a seventeen-foot floodgate arm located three feet off the roadway was not a special defect because it did not "prevent ordinary users from traveling on the road (as opposed to skidding off the road)." *See Beynon*, 283 S.W.3d at 332. The court explained an ordinary driver "would not be expected to careen uncontrollably off the paved roadway and into the adjoining grass," and the floodgate arm "was neither the condition that forced [the] car off the road initially nor the condition that caused the car to skid sideways and crash into the floodgate arm." *Id.*

## Discussion

In this case, Cantu, the TxDOT maintenance supervisor, testified that according to TxDOT's maintenance manual, three inches is the maximum acceptable height of a drop-off; that a three-inch drop-off is an unexpected hazard that could cause an accident; and that almost all drivers that encounter a drop-off of more than four inches could lose control of their vehicle. Here, the drop-off at the edge of the shoulder was 8 ¾ inches—well in excess of what TxDOT considers

the maximum acceptable height, and what Ramirez's accident reconstruction expert Locke labeled a "defectively dangerous condition." Locke testified that it is common for drivers to be killed or seriously injured by running off the roadway and that oftentimes, the cause of the accident is a drop-off at the pavement edge. Locke explained that steep drop-offs such as the one in this case effectively prevent the tires of a vehicle from reentering the pavement, and that in an effort to re-enter the roadway, drivers will often steer too far to the left, causing them to lose control of their vehicles.

Based on this evidence, we conclude the drop-off at the edge of the paved shoulder posed an unexpected danger to ordinary users of the roadway. *See Morse*, 905 S.W.2d at 475 (holding a six-to-twelve-inch drop-off between the travel lane and the roadway's shoulder was a special defect); *Dorman*, 1999 WL 374167, at *3 (holding a four-inch drop-off along the roadway's shoulder was a special defect). The drop-off in this case was located at the edge of the pavement, thus posing a threat to ordinary users of the roadway that approach the edge of the roadway. Moreover, the drop-off was located near a truck stop where vehicles may, as in this case, need to avail themselves of the shoulder in order to avoid colliding with vehicles that are turning into or pulling out of the truck stop. Ramirez, as an ordinary user of the roadway, used the paved shoulder to avoid colliding with a tractor-trailer that was stopped in the travel lane. Cantu's testimony confirms that an ordinary user of the roadway would not expect to encounter a steep drop-off at the edge of the pavement.

The drop-off condition encountered by Ramirez was not located off and unconnected to the roadway, such as the floodgate arm in *Beynon*. *See Beynon*, 283 S.W.3d at 332. Moreover, the drop-off in this case was not an obvious condition intended to clearly mark the boundaries of the roadway as part of the roadway's original design, such as in *Perches*. *See Perches*, 388 S.W.3d at 656. Additionally, although TxDOT argues Ramirez was not an ordinary driver because he was

out of control at the time of the accident, the record shows Ramirez was traveling under the speed limit and that if Ramirez had applied maximum braking in that situation, the tractor trailer could have jackknifed, which would have presented a danger to traveling motorists on the two-lane highway. Moreover, the record suggests Ramirez was in control of his vehicle and safely attempted to maneuver around the stopped truck.

Therefore, given the excessive depth of the drop-off, its potential to impair motorists' ability to travel, its unreasonably dangerous nature, and the threat it posed to ordinary users of the roadway, we conclude the drop-off in this case was a special defect. We overrule TxDOT's first and second issues.

**OPEN AND OBVIOUS CONDITION**

In its third issue, TxDOT contends the trial court's judgment should be reversed because the drop-off was an open and obvious condition.

Because "there is no need to warn against obvious or known dangers, a landowner generally has no duty to warn of hazards that are open and obvious or known to the invitee." *Austin v. Kroger Texas, L.P.*, 465 S.W.3d 193, 204 (Tex. 2015). Whether a duty exists because the complained-of condition was open and obvious is a matter of law that we review de novo. *Advance Tire & Wheels, LLC v. Enshikar*, 527 S.W.3d 476, 480 (Tex. App.—El Paso 2017, no pet.). Courts have held that no duty existed because the condition was open and obvious where the dangerous condition was one the plaintiff knew of and appreciated or that a reasonable person would have known and appreciated. *See Nethery v. Turco*, No. 05-16-00680-CV, 2017 WL 2774448, at *3 (Tex. App.—Dallas June 27, 2017, no pet.) (mem. op.) (holding ice on residential driveway was an open and obvious condition where evidence showed plaintiff saw the ice before stepping on it and appreciated its dangerous nature enough to be more cautious and attempted to step around it); *Martin v. Gehan Homes Ltd.*, No. 03-06-00584-CV, 2008 WL 2309265, at *2 (Tex. App.—Austin

June 4, 2008, no pet.) (mem. op.) (holding general contractor had no duty to warn of the lack of guardrails on a second-story landing where, although plaintiff did not know about the lack of guardrails, anyone could have seen it before walking upstairs); *cf. Harwell v. Bell Inv. Corp.*, No. 10-15-00358-CV, 2017 WL 888380, at *2 (Tex. App.—Waco Mar. 1, 2017, pet. denied) (mem. op.) (holding fact issue existed as to whether pothole was open and obvious where plaintiff did not see the pothole, the pothole was not obvious when a crowd was walking on the premises, and the evidence was disputed as to whether the premises was crowded at the time of the incident).

In this case, the record does not support TxDOT's contention that the drop-off was either open and obvious or known to Ramirez. Ramirez testified he had never noticed the drop-off before the accident despite regularly traveling on this highway. Cantu testified that although a commercial driver driving past the drop-off should have noticed the drop-off, a driver would not notice it unless he were at the shoulder and had arrived at the location of the drop-off. Moreover, there was no sign warning of the drop-off. We conclude the drop-off was not an open and obvious condition. Accordingly, we overrule TxDOT's third issue.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

Irene Rios, Justice