COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS


| THE CITY OF ELPASO, | § | |
| | | No. 08-19-00056-CV |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | County Court at Law #3 |
| ALBERT LOPEZ and LEXBY LOPEZ, | § | |
| | | of El Paso County, Texas |
| Appellees. | § | |
| | | (TC# 2017DCV0065) |
| | § | |

## **O P I N I O N**

This is an interlocutory appeal from the denial of a plea to the jurisdiction in a suit brought against the City of El Paso for the wrongful death of Albert Adam Lopez. In two issues, the City argues that Appellees failed to invoke the governmental immunity waiver under the Texas Tort Claims Act because Appellees (1) failed to comply with the jurisdictional notice provisions contained in Section 101.101 of the Act; and (2) failed to state a claim under the special defect provision contained in Section 101.022(b) of the Act.

Because we find that the undisputed jurisdictional evidence in this case sufficiently establishes that the City had actual notice of its alleged fault contributing to Mr. Lopez's death, as well as the existence of a special defect for which the Act's immunity waiver is invoked, we affirm.

**FACTUAL BACKGROUND**

On June 14, 2015, at approximately 9:24 p.m., Albert Adam Lopez was traveling east bound on his motorcycle at the 1700 block of San Antonio Avenue in El Paso, Texas. At that time, San Antonio Avenue ended abruptly at a concrete irrigation canal and a concrete barrier. There were neither road signs nor any other type of warnings signaling motorists that the road ended at the canal and the road had no lighting. After Mr. Lopez lost control of his motorcycle, he collided with a concrete barrier, and was ejected from the motorcycle. The motorcycle was split in two and landed in the canal. Mr. Lopez's body landed on a set of railroad tracks adjacent to the canal. Mr. Lopez later died from the injuries sustained in the impact. An autopsy revealed Mr. Lopez's blood alcohol level at the time of his death was 0.105.

On the night of the collision, Albert J. Gandara, a police officer and investigator with the El Paso Police Department was dispatched to the scene. Officer Gandara conducted an accident investigation and wrote down his findings in a "Texas Peace Officer's Crash Report" in which he wrote that "the driver . . . failed to stop for the end of the street or roadway and crashed his bike in to the canal." Following Mr. Lopez's death, the case was assigned to the Special Traffic Investigation Unit of the El Paso Police Department for a "follow up investigation." On June 19, 2015, Adrian Armendariz, a police officer and investigator with the STI Unit took a "confidential" statement from a witness to the collision named Genesis Sanchez, who had been living near the scene of the collision since January. Ms. Sanchez reported that "there are a lot of cars that crash into the canal" because "[t]here are no warning signs to let you know that the street ends so when people come out the bars they wind up crashing at the canal."

On July 8, 2015, Officer Gandara took a "confidential" written statement from Berkley

2

Hatch, a police officer with the El Paso Department, who was also dispatched to the scene on the night of the collision. According to Officer Hatch's confidential statement, Mr. Lopez's collision was the third he had seen in this area in four years. He also observed that at the time of Mr. Lopez's collision, "there were no road signs posted or any kind of warning of the dead end."

On August 20, 2015, Officer Armendariz, wrote a "confidential" investigation report in which he concluded that the "lack of signs and illumination" were factors, among others, that caused the collision. According to Appellees, after these findings were made, the City "promptly barricaded the dead end road in question and placed warning signs and installed lighting." The City received formal written notice of the Appellees' claim on December 15, 2015. These facts are undisputed.

## DISCUSSION

Under the common law, municipalities like the City of El Paso are immune from suit and liability for damages arising from the performance of governmental functions absent a clear and unambiguous legislative waiver of immunity. *Wasson Interests, Ltd. v. City of Jacksonville*, 559 S.W.3d 142, 146-47 (Tex. 2018). The Texas Tort Claims Act (the "Act") waives immunity for certain tort claims, including premises defects, "to the extent of liability" under the Act. TEX.CIV.PRAC.&REM.CODE ANN. §§ 101.022, .025; *County of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex. 2002)(*quoting Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 611 (Tex. 2000), which interprets Section 101.021 of the Act).

### I.     The Texas Tort Claims Act's Notice Requirement

The Act requires that a governmental unit receive notice of a claim not later than six months after the day the incident giving rise to the claim occurred, TEX.CIV.PRAC.&REM.CODE ANN.

§ 101.101(a), or within a timeframe set out in a city's charter or ordinance, TEX.CIV.PRAC.&REM.CODE ANN. § 101.101(b), unless the governmental unit "has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged."  TEX.CIV.PRAC.&REM.CODE ANN. § 101.101(c).

Compliance with the Act's notice provision is a jurisdictional pre-requisite to suit.  *See* TEX.GOV'T CODE ANN. § 311.034 ("Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity."); *see also, City of Dallas v. Carbajal*, 324 S.W.3d 537, 537-538 (Tex. 2010)("The provision of notice [under Section 101.101] is a jurisdictional requirement in all suits against a governmental unit.").  The City contends that Appellees failed to comply with the Act's notice requirement and that, consequently, it remains immune from suit and liability.   Appellees concede they failed to provide the City with *timely written* notice of their claim under Sections 101.101(a) and (b), but they contend the City had *actual notice* of its fault, which renders formal notice of their claim unnecessary.  *See* TEX.CIV.PRAC.&REM.CODE ANN. § 101.101(c).

**A.      Standard of Review**

Appellees bear the burden of affirmatively demonstrating the trial court's subject matter jurisdiction.  *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003).   When jurisdictional evidence is undisputed, as is the case here, we review the actual-notice issue *de novo*. *Worsdale v. City of Killeen*, 578 S.W.3d 57, 66 (Tex. 2019).

**B.      Section 101.101 of the Texas Tort Claims Act and Actual Notice**

The Act's notice requirement is set out in Section 101.101, which provides:

(a) A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the

4

claim occurred. The notice must reasonably describe:

> (1) the damage or injury claimed;
> (2) the time and place of the incident; and
> (3) the incident.

(b) A city's charter and ordinance provisions requiring notice within a charter period permitted by law are ratified and approved.

(c) The notice requirements provided or ratified and approved by Subsections (a) and (b) do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged.

TEX.CIV.PRAC.&REM.CODE ANN. § 101.101. Appellees rely on the "actual notice" provision found in Section 101.101(c) to support their claim that the notice requirement of the Act was met.

"Actual notice means the governmental unit is subjectively aware that it may be responsible for death, injury, or property damage in the manner ultimately alleged by the claimant." *Worsdale*, 578 S.W.3d at 77. In order to demonstrate "actual notice" for purposes of Section 101.101(c), a plaintiff must show the governmental unit had knowledge of: (1) a death, injury, or property damage; (2) the governmental unit's alleged fault producing or contributing to the death, injury, or property damage; and (3) the identity of the parties involved. *Cathey v. Booth*, 900 S.W.2d 339, 340-41 (Tex. 1995).

C. **Undisputed Facts Demonstrating Actual Notice of Fault for Death**

In their live pleading Appellees alleged, among other things, that the City proximately caused Mr. Lopez's fatal collision by "creating a dead end road without providing adequate warning of the dead end road" and "creating a dead end road without providing adequate lighting." They further alleged that "notice to the Defendants [sic] City of El Paso is satisfied under § 101.101(c) of the Texas Torts Claim[s][Act]."

5

In support of their assertion that the City had actual notice of its alleged fault, Appellees point to the following undisputed facts: (1) the Special Traffic Investigation Unit of the City's Police Department conducted an investigation into the cause of Mr. Lopez's fatal collision; (2) the STI investigative report concluded that the lack of illumination and signage were factors contributing to the collision; and (3) after STI issued its special investigative report, the City acted promptly to correct the defects by adding signage and barricades, and installing lighting.[1] The City argues that these facts are insufficient to establish its subjective awareness of its alleged fault because the STI report does not expressly find that *the City was responsible* for the road conditions that caused the collision.

The Texas Supreme Court recently decided an "actual notice" case with substantially similar facts. *See Worsdale*, 578 S.W.3d at 57. In *Worsdale*, the decedent was driving a motorcycle at night and collided with a large dirt mound spanning the width of an unlit road. *Id.* at 60. With respect to the accident investigation that followed, the Court observed:

> Within days after the crash, the Killeen Police Department dispatched an officer to conduct an accident investigation. The investigator photographed the accident site, including the dirt pile, and constructed a scale diagram of the scene using 3D laser-mapping technology. In the 'Texas Peace Officer's Crash Report,' the investigator identified road conditions and alcohol consumption as 'contributing factors,' observing:

---

[1] Appellees asserted at the hearing on the City's plea to the jurisdiction and in their closing response brief filed in the trial court that the City erected warning signs and installed lighting immediately after the STI report was issued. Appellees make the same assertions here. In the court below, the City did not dispute that it took such actions. Rather, in their closing brief to the trial court, the City argued that such actions were "subsequent remedial measures" that could not be considered under TEX.R.EVID. 407. Likewise, here, the City does not dispute that it erected signs and installed lighting *after* Mr. Lopez's death and after the STI report issued. But, here, the City abandons its argument that evidence of these subsequent remedial measures is barred. Instead it argues anew that the City exercised its discretion "of placing street signs and barricades on the street in question. . . . after City Traffic Engineers assessed the road conditions, not because the City had actual notice of any factor that may have contributed to Decedent's death." The City cites no record evidence to substantiate that claim. A bare allegation is insufficient to rebut the evidence in the record from which reasonable inferences can be drawn that the City's remedial actions, which the City acknowledges occurred *after* Mr. Lopez's death, were done *in response to* Mr. Lopez's death.

6

This area is dark and not lighted, at the time of the crash the area was dark. Reese Creek road is currently blocked by a dirt pile from the ditch on the North side of the roadway to the ditch on the south side of the roadway, closing the roadway to vehicular traffic for construction. At the time of the crash there were no signs, barricades, or cones present to indicate that the roadway was closed to Westbound traffic on Reese Creek East of the area of the crash.

As part of the crash investigation, the officer spoke with several officials from various city departments, including the deputy city attorney and the city inspector. The main topic of conversation was responsibility for road maintenance and warning signs. City officials acknowledged that the two-lane road had been obstructed for at least two years but denied responsibility for the blockage. The City explained that barricades and warning signs had not been erected before the accident due to an ongoing dispute between Bell County and the City over jurisdiction. Each claimed the other was responsible for maintaining the road.

Although the city inspector said the City had owned but then abandoned the property, the city attorney informed the crash investigator that an ordinance would be required to abandon the road and none could be located. Two days after the accident, the City removed the dirt pile from the road at the police department's request and installed permanent road-closure signs and barricades.

*Worsdale*, 578 S.W.3d at 60. Thus, in *Worsdale*, even though the city's investigation reached no conclusion about *who* was responsible for either the dirt pile or maintenance of the road, the evidence was clear that there was an effort by the City to "track down whether the City was charged with maintaining the road and remediating the hazard." *Id.* at 67. And that following the determination of "its alleged responsibility for the road's condition, the City promptly remediated the hazard." *Id.* at 68. The Court emphasized that "[w]hether the City believed it was liable or not is not the standard." *Id.* Rather, the question is whether the facts "firmly establish[] the City's knowledge connecting its alleged ownership and control of the road to the road conditions identified as contributing to [the deaths]." *Id.* at 67. "The critical inquiry is the governmental unit's actual *anticipation* of an alleged claim rather than subjective confirmation of its actual liability." [Emphasis added]. *Id.* at 68.

7

Here, we believe the connection was made between the City's alleged ownership and control of the road and the factors identified as contributing to Mr. Lopez's death. Following Mr. Lopez's death, a special investigation ensued to determine what factors contributed to the crash. Within two months of the accident, the STI report expressly determined that the lack of warning signs and illumination were contributing factors that caused Mr. Lopez's death. After the report was issued, the City exercised its control over the road to remediate the hazard (lack of signage and illumination) identified in the STI report by installing warning signs, barricades, and lighting. The fact that the City's remediating actions mirror the contributing factors identified in the STI's report, in our view, clearly demonstrate an actual anticipation of a claim as alleged by the Appellees.

After conducting our *de novo* review, we hold that the City had "actual notice" under Section 101.101(c) of the Texas Tort Claims Act as that phrase is interpreted by the Texas Supreme Court, and that "notice of a claim" under Sections 101.101(a) and (b) were not required. We overrule the City's first issue.

## II.     Special Defects under the Texas Tort Claims Act.

In its second issue, the City claims that it retains governmental immunity because Appellees failed to state a claim under the Act. According to the City, because it exercised discretion *not* to install lighting and warning signs when the relevant portion of the roadway was originally designed, it is insulated from the Act's waiver provisions. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 101.056. Appellees on the other hand assert they have stated a claim under the Act because, according to Appellees, an unlit road that ends abruptly at a concrete

8

barrier and canal is a special defect that imposes on the City a duty to warn,[2] and an alleged breach of that duty *does* fall within the waiver provisions of the Act. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 101.022(b)(imposing "duty to warn of special defects").

## A. Standard of Review

The Act limits a governmental unit's liability for premise defects to dangerous conditions of which it is aware. TEX.CIV.PRAC.&REM.CODE ANN. § 101.002, *et seq*.; TEX.CIV.PRAC.&REM.CODE ANN. § 101.022(a). However, the requirement that a governmental unit be *aware* of a dangerous condition "does not apply to 'special defects such as excavations or obstructions on highways, roads, or streets.'" *Texas Dept. of Transp. v. Perches*, 388 S.W.3d 652, 654 (Tex. 2012)(*citing* TEX.CIV.PRAC.&REM.CODE ANN. § 101.022(b)). Where a special defect exists, the governmental unit owes the same duty to warn as a private landowner owes to an invitee, one that requires the governmental unit to "use ordinary care to protect an invitee from a dangerous condition of which the owner is *or reasonably should be aware*." [Emphasis added]. *Denton County v. Beynon*, 283 S.W.3d 329, 331 (Tex. 2009). The Act does not define "special defect" but "likens it to excavations and obstructions that exist on the roadway surface." [Internal quotation marks omitted]. *Id*. The dangerous condition need not have been created or caused by the government unit to constitute a special defect for which the governmental unit has a duty to warn. *Harris County v. Eaton*, 573 S.W.2d 177, 179-80 (Tex. 1978). The existence of a special defect is a question of law that we review *de novo*. *Denton County,* 293 S.W.3d at 331.

## B. Undisputed Facts Establishing Special Defect.

---

[2] Specifically, Appellees state "[i]n the instant case the special defect was on the roadway and clearly poses a risk of injury to ordinary users of East San Antonio Avenue. Decedent was using the roadway exactly as any ordinary user would be expected to use the roadway if unaware of the fact that the road ahead comes to an abrupt end at the aforementioned concrete barrier and water canal."

Here, in their live pleading, Appellees alleged that "the Defendant City of El Paso was negligent for failing to warn the Decedent of a special defect." The undisputed jurisdictional facts establish that the public road in question unexpectedly and abruptly ended at a canal and concrete barrier, both of which are like either an excavation (the canal) or an obstruction (concrete barrier). Both the canal and the concrete barrier were located on the roadway's path, neither of which were visible in the dark to ordinary motorists, like Mr. Lopez, who was using the public road at the invitation of the government and who would not reasonably expect to encounter such a road condition suddenly and without warning.

Other courts have found the existence of special defects under similar circumstances. *See Worsdale*, 578 S.W.3d at 68 (a dirt pile completely obstructing an otherwise open road is itself a special defect); *Harris County v. Estate of Ciccia*, 125 S.W.3d 749, 754 (Tex.App.—Houston [1st Dist.] 2003, pet. denied)(a road that suddenly ended at a concrete culvert with insufficient lighting was special defect); *Chappell v. Dwyer*, 611 S.W.2d 158, 161 (Tex.App.—El Paso 1981, no pet.)("We believe the arroyo was a special defect . . . [because] barriers had been erected to prevent vehicles from turning at the point where this accident occurred, but they had been removed and never replaced."); *Harris County*, 573 S.W.2d at 179 (a hole in roadway that "had reached the proportions of a ditch" was special defect); *City of Houston v. Jean*, 517 S.W.2d 596, 599 (Tex.App.—Houston [1st Dist.] 1974, writ. ref'd n.r.e.)(a road that suddenly ended at a ditch with insufficient lighting was special defect).

Moreover, the City's reliance on *Texas Dept. of Transp. v. Perches*, 388 S.W.3d 652 (Tex. 2012) is misplaced. In *Perches*, the Court was deciding whether a guardrail constituted a special defect. In determining that it did not, the Court observed that: (1) the guardrail was like neither

an excavation or obstruction; (2) its function was to "prevent cars from falling off the underpass;" (3) it was part of the "initial design" of the roadway; and (4) it did not "impede travel or otherwise 'block' the road for an ordinary user in the normal course of travel, but rather in accordance with its intended purpose, [it] delineate[d] the roadway's bounds." *Id*. at 656. We find the facts in this case are clearly distinguishable from those in *Perches*.

We hold that the undisputed jurisdictional evidence sufficiently establishes the existence of a special defect for which the Act's waiver provision is invoked. Accordingly, we overrule the City's second issue.

## CONCLUSION

Having overruled both of the City's issues, we affirm the trial court's judgment.


December 16, 2019

YVONNE T. RODRIGUEZ, Justice

Before Alley, C.J., Rodriguez, and Palafox, JJ.

11