**CITY OF HOUSTON, Appellant,**

v.

**Ada Elizabeth JEAN, Appellee.**

**No. 16386.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Nov. 21, 1974.

Rehearing Denied Dec. 19, 1974.

Jonathan Day, City Atty., Joseph G. Rollins, Senior Asst. City Atty., Houston, for appellant.

Moore & Laurence, Robert M. Moore, L. E. Laurence, Houston, for appellee.

EVANS, Justice.

Ada Elizabeth Jean was injured when she drove her automobile off a dead end city street into an adjacent ditch. There were no barricades, warning lights or signs indicating the end of the street or the presence of the ditch.

The jury found that the City's failure to have a barricade at the end of the street was negligence and that such failure was a proximate cause of the occurrence. It also found that the City's failure to install adequate signs along the street indicating it was not a "through" street was negligence and that such failure was a proximate cause of the occurrence. The jury failed to find the City's failure to have warning lights near the end of the street or to install and maintain a sign that the street was a "dead end street" was negligence.

The City in its points two through five contends that there was insufficient evidence to justify submission to the jury of the special issues concerning negligence and causation and that the jury's answers to these issues are against the overwhelming weight and preponderance of the evidence. These points of error are multifarious in that each point challenges several findings of the jury and because points three and four are phrased to present both legal and factual sufficiency questions in one point. In examining the City's argument under these points and considering the assignments in the motion for new trial to which the City makes reference, it appears the City is questioning the legal sufficiency of the evidence. Keith v. Ledbetter, 431 S.W.2d 433 (Tex.Civ. App.—Amarillo 1968, writ ref'd, n. r. e.); Calvert, 38 Tex.Law Review 361 (1960); Rule 418, Texas Rules of Civil Procedure. However, due to the nature of the evidence presented, we have considered these points as testing both the legal and factual sufficiency of the evidence. Lofland v. Jackson, 237 S.W.2d 785 (Tex.Civ. App.—Amarillo 1950, writ ref'd, n. r. e.).

The evidence shows that Miss Jean, her cousin and another girl friend had been visiting a friend at her apartment on the evening preceding the accident. About midnight Miss Jean left the friend's apartment by herself and was driving toward her home. She was taking a route home different from that taken to her friend's apartment. Miss Jean's brief description of her trip to the scene of her accident indicates that after leaving her friend's apartment she drove east on Elm Street and that her car crossed through the intersection of Elm Street with Alder Street and went into a ditch. In her testimony a blackboard was used which is not before us.

The officer who investigated the accident described Elm and Alder Streets as "rough-type black top pavement." He stated that Elm Street dead ends into Alder Street at a "T" intersection and that a 6-foot deep ditch runs parallel with and about four feet distant from the east line of Alder Street. The area to the east of the ditch is an open field with weeds and he could not recall any trees or other structures out in the field or close to the

intersection. The weather was clear and fairly warm. There were no signs indicating that Elm was a dead end street and the only lighting at the location was a "small light approximately 25 to 30 feet up the roadway." The officer testified that this light was "one of the real old timers" that the City possibly used prior to the installing of the "big kind that puts out a great amount of light." The light appeared to be a 150 to 200 watt bulb that was screwed in under "a little lamp-type thing." The officer testified this light did not put out much light at the intersection and that it was just a street light and not a warning light. He said there were no warning devices whatsoever at the intersection. Miss Jean's car was found facing into the ditch indicating it had been proceeding in an easterly direction. The officer's testimony was also related to a blackboard drawing which is not before us.

It was stipulated that Elm and Alder Streets were within the corporate limits of the City of Houston and that at the time of the accident there were no signs indicating that Elm was a dead end street or that it was not a through street; nor were there any barricades or warning lights at that location.

There was no direct testimony of any eyewitness to the accident other than that of Miss Jean. The record indicates that the issue of contributory negligence was not raised by the pleading and the trial court's order granting Miss Jean's motion in limine expressly precluded the introduction of any testimony by Miss Jean or other witness "concerning the actions or conduct of the plaintiff in driving her vehicle either prior to or during the time that she ran off the embankment."

■ We are of the opinion that the evidence is sufficient to support the jury's findings of negligence and proximate cause. The City was under a duty to warn or protect against any special defect such as an excavation or obstruction in the street or in such proximity to the street as

to render travel unsafe. Gabbert v. City of Brownwood, 176 S.W.2d 344 (Tex.Civ. App.—Eastland 1943, writ ref.). See also Texas Tort Claims Act, Article 6252–19, § 14(12), Vernon's Tex.Rev.Civ.Stat.Ann.

■ The testimony showed that the accident occurred at nighttime at the end of black top pavement and that there were no trees, structures or barricades at the end of Elm Street indicating its termination. The jury could reasonably have inferred, under such circumstances, that a street which suddenly stopped only four feet from a 6-foot ditch and with only a 150 to 250 watt bulb lighting the area constituted a dangerous condition and that the City was negligent in its failure to warn or protect travelers against such danger. City of Austin v. Schmedes, 154 Tex. 416, 279 S.W.2d 326 (1955); City of Austin v. Daniels, 160 Tex. 628, 335 S.W.2d 753 (1960); City of Waco v. Darnell, 35 S.W.2d 134 (Tex. Com.App.1931).

■ We believe the issue of proximate cause, which included the element of foreseeability, was one of fact for the jury. City of Fort Worth v. Lee, 143 Tex. 551, 186 S.W.2d 954 (1945). It is not suggested that the accident occurred as the result of Miss Jean's own negligence and in the absence of evidence of contributory negligence, the jury could assume that she drove with due care for her own safety. City of Houston v. Henderson, 506 S. W.2d 731 (Tex.Civ.App.—Houston [14th] 1974, no writ). Since the evidence tended to show that the accident could reasonably have been caused by the City's failure to have barriers, or warning signs at the location, the jury was at liberty to infer from circumstances of the accident that "the known possibility produced the result." Collier v. Hill & Hill Exterminators, 322 S.W.2d 329, 337 (Tex.Civ.App.—Houston [1st] 1959, no writ). The issue of proximate cause may be established by circumstantial evidence. Bock v. Fellman Dry Goods Co., 212 S.W. 635 (Tex.Com.App.

1919). The City's points two through five are overruled.

■ The City's sixth and seventh points of error complain that Miss Jean's counsel committed reversible error in his final argument to the jury. The argument complained of is as follows:

"Do you think any person would, regardless of how badly they think money is important in their life. Do you think anyone would in advance say yeah, I'll do that for $80,000.00. I don't think any of you would. I know she wouldn't and I know I wouldn't.

"O.K. Now let's try and approach it from the other way. Counsel was talking about the fact he has a girl of this age and he can identify with her. I wonder if counsel would take $80,000.00 if his girl—"

The City objected to this argument on the ground that Miss Jean's counsel was "getting into personalities." The trial court sustained the objection and Miss Jean's counsel apologized for making the statement. A review of previous argument reflects that counsel for Miss Jean was arguing the point that a person would not willingly undergo injury of this nature for the sum of $80,000.00. No objection was made to that line of argument and it was not until counsel made the quoted statement that objection was asserted.

Subsequently Miss Jean's counsel made the following argument:

"But the thing I wish you would consider is that the law allows this young lady some compensation. I am not saying treat her like a princess, don't give her any special treatment. We are not asking for that. The most we could ask for and the proper thing we could ask for is no more than you yourself could ask for under the Golden Rule and that is do unto others as you would have—"

To this statement the City's attorney objected that counsel was asking the jury to put themselves in the place of the plaintiff. The trial court sustained the objection and instructed the jury to disregard the statement. At that point Miss Jean's counsel continued: "The Golden Rule, do unto others as you would have—," to which the City further objected and the trial court sustained the City's objection. The City's attorney then moved for mistrial which the court overruled.

The Texas Supreme Court has held in Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex.Sup.1963), that the Golden Rule argument even when compounded with other objectionable argument would not constitute reversible error where proper instructions to disregard had been given to the jury. We believe the trial court's instructions were properly given and that these points do not present reversible error. Rule 503, T.R.C.P. The City's points six and seven are overruled.

In its remaining points the City complains of the jury's verdict and the trial court's judgment with respect to the award of damages for past medical expenses and past and future pain and suffering.

■ The record reflects that the complaint urged by the City's first point has been cured by voluntary remittitur in the trial court. The judgment recites that the jury found $2,000.00 as the amount which would compensate Miss Jean for past medical expenses and that she voluntarily remitted the sum of $965.00 for the reason that she only proved $1,035.00 as past medical expenses. We believe any error was cured by the tender and acceptance of remittitur. Rules 315 and 319, T.R.C.P.; Rone Grain Co. v. McFarland, 381 S.W.2d 220 (Tex.Civ.App.—Tyler, 1964, no writ).

■ In the City's eighth point it asserts that the jury's award of $12,500.00 for past pain and suffering and $12,500.00 for future pain and suffering was so excessive and against the great weight and preponderance of the evidence as to show prejudice and improper motive on the part of the jury.

The testimony of Miss Jean showed that after the accident she was conscious and could feel that some of her teeth had been knocked out and that others protruded straight out. She testified:

"A. My feeling in my lower lip was completely cut off on the right and just hanging like a piece of tissue and some tissue on the left side, it was just hanging there my lip was.

"Q. It wasn't severed completely?

"A. It was severed completely here (indicating), yes.

"Q. It was hanging by one side?

"A. Yes, sir.

"Q. Did you have all of your teeth in your mouth?

"A. Everything was out.

"Q. Where were they?

"A. It turned out three of the teeth were on the floor board of the car."

Officer Calhoun testified that Miss Jean had deep lacerations about her mouth and that she complained of severe chest pains.

Dr. Jess C. Galbreath testified that when he saw Miss Jean, shortly after the accident, "her mouth was so sore and swollen from the lacerations of the lower lip it was difficult to examine her at that time." He said her teeth were mal-aligned in relation to where they had been before, that the alveolar ridge or bone that supports the teeth had been fractured and that three teeth had been knocked completely out. He said some of her teeth were discolored and turning dark, indicating that the nerves were dying and that they would become non-vital. He said her lip was sutured and swollen and that she had sustained a jagged laceration the whole length of her lower lip. He said that her condition was extremely painful and that he could hardly touch her that she did not feel acute pain.

Dr. Galbreath further testified that Miss Jean had a total of eight teeth which would probably die as a result of her injury. He operated on her shortly after the accident to transplant three of her lower teeth. Those teeth were finally rejected more than a year later, during which time they were loose, sore and had to be wired in place. During that period of time her teeth and gums were abscessed, causing her to develop gum boils which he had to open up and let drain. He said the condition was painful until the boils were opened up and drained.

Dr. Galbreath anticipated that in the future Miss Jean would require three root canals and caps for her upper teeth and a bridge to replace the lower teeth. He described these procedures as complicated and sometimes very painful. He testified that Miss Jean might develop pyorrhea or a peridontal disease that would cause her to lose her teeth and that it is more probable that she would have such problems due to the injury than if she had not had any injury. He testified that she would not be able to bite or tear at her food with her front teeth and that she would never have any feeling on one side of her lower lip because the nerve had been severed.

Miss Jean testified that her mouth had always hurt since the accident but that when she was having the abscesses "there was a terrible, terrific pain." She said that she couldn't stand the pain because "it seemed like my gums were shrinking." She said the pain had been unbearable. She said she could not brush her teeth in a normal manner; could not digest her food normally and that for a period of several months she was restricted to a diet of certain liquids. She said she had no feeling in her lower lip and that due to its numbness she burned herself on hot coffee and had on occasion been embarrassed by not being able to feel food particles on her lip. Miss Jean's mother testified that she had observed her daughter experiencing pain and discomfort on numerous occasions and noticed also that her daughter had begun grinding her teeth at night. She said she had noticed a change in her daughter's at-

titude and had considered retaining a psychiatrist to counsel with her daughter. Dr. Galbreath also testified he had noted signs of mental distress in Miss Jean during the time he treated her.

The judgment entered in this case reflects that Miss Jean was awarded the total sum of $32,635.00 representing the following items:

| | |
|---:|---|
| $12,500.00 | for physical pain and mental anguish in the past |
| 12,500.00 | for physical pain and mental anguish in the future |
| 300.00 | for loss of earnings |
| 1,035.00 | for past medical treatment (the jury's award was $2,000.00 and Miss Jean remitted $965.00) |
| 3,300.00 | for future medical treatment (the jury's award was $5,000.00 and Miss Jean remitted $1,700.00) |
| 1,500.00 | for past physical impairment |
| 1,500.00 | for future physical impairment |

$32,635.00

It is not the function of this court to disturb a jury's award unless it is affirmatively shown that the jury's verdict was improperly motivated by passion, prejudice or improper motive or unless its excessiveness is so shocking to the conscience that it cannot be accounted for on any other ground. World Oil Co. v. Hicks, 129 Tex. 297, 103 S.W.2d 962 (1937); Bluebonnet Express, Inc. v. Foreman, 431 S.W.2d 45 (Tex.Civ.App.—Houston [14th] 1968, no writ).

The fact that the jury's award in this case may have been excessive in certain particulars does not necessarily mean that it was also excessive with respect to the amount assessed for physical pain and suffering. Chickasha Cotton Oil Co. v. Holloway, 378 S.W.2d 695 (Tex.Civ.App.—Amarillo 1964, writ ref. n. r. e.). It is difficult to apply any formula or to make definite comparisons in the appraisement of another's pain and suffering. City of Houston v. Moore, 389 S.W.2d 545 (Tex. Civ.App.—Houston 1965; writ ref. n. r. e.); Gilbert v. Haigler, 363 S.W.2d 337 (Tex. Civ.App.—Houston 1962, writ ref. n. r. e). Viewing the evidence in a light most favorable to the jury's award we cannot say that its findings as to past and future pain and suffering should be disturbed.

We overrule the City's points one and eight.

Affirmed.