# Supreme Court of Texas

No. 21-0784

Kristopher Lloyd Fraley,
*Petitioner*,

v.

Texas A&M University System,
*Respondent*

On Petition for Review from the
Court of Appeals for the Seventh District of Texas

**Argued November 29, 2022**

JUSTICE BLAND delivered the opinion of the Court.

A driver proceeded straight through a T-shaped intersection, leaving the roadway and landing in a shallow ditch on the other side. He sued the university system charged with maintaining the road, claiming that a lack of lighting, barricades, and warning signs around the intersection caused his injuries. He further alleged that the Tort Claims Act waived the university's immunity from suit.

The university filed a jurisdictional plea, arguing that these alleged facts demonstrated neither a special defect nor an unreasonably

dangerous condition. The alleged failure to provide adequate warning signs and the overall design of the intersection are discretionary decisions, it further argued, for which the Act expressly denies a waiver of governmental immunity unless the facts demonstrate a special defect. The court of appeals reversed the trial court's denial of the university's jurisdictional plea and ordered the case dismissed.

We agree with the court of appeals that neither the driver's pleadings nor the evidence demonstrates a special defect under the Act. We further conclude that the alleged dangerous conditions—grounded in failures of design and lack of signage at the intersection—are discretionary decisions for which immunity is not waived. We therefore affirm.

**I**

Petitioner Kristopher Fraley drove straight through an unfamiliar and unlit T-intersection at Sixth Street and Avenue B, leaving the roadway and coming to rest in a ditch. The single-car accident happened on Respondent Texas A&M University System's RELLIS Campus. The University owns and maintains the campus and its roadways.

A month before the accident, the University converted the intersection from a four-way intersection into a three-way T-intersection. After the conversion, a sloped ditch running parallel to Sixth Street and adjacent to the roadway remained.

A yield sign on Avenue B marked Fraley's northbound approach to the T-intersection. Other than the yield sign, the intersection had no

2

streetlights or traffic control devices, and no guardrail or barricade blocked the top of the T on the other side of the intersection.

Fraley sued the University, claiming that the intersection's dangerous condition caused his accident and resulting injuries. The University responded with a jurisdictional plea, arguing that Fraley's pleadings failed to state facts showing that the intersection presented an unreasonably dangerous condition or that the University was aware of any such condition. The University's immunity also was not waived based on alleged failures in the intersection's design, it argued, because the Tort Claims Act expressly carves out from the waiver of immunity negligence claims that are based on a government's discretionary decisions, particularly decisions about the initial placement of roadway warning signs and signals—unless the facts alleged demonstrate a special defect.[1] The University preemptively argued that Fraley's accident did not arise from a special defect.

In reply, Fraley filed his third amended petition, alleging a special defect in addition to ordinary premises defects. In that petition, he alleged that the University breached its duty of care by removing the northern stretch of the road and:

- failing to warn drivers of the road's alteration;
- failing to light the area;
- failing to guide drivers away from the area;
- failing to barricade or block off the area; and
- failing to make the intersection reasonably safe.

---

[1] *See* Tex. Civ. Prac. & Rem. Code § 101.060.

3

Fraley filed two photographs and some deposition testimony with the trial court in connection with the plea proceedings. The trial court denied the plea.[2]

The court of appeals reversed, holding that Fraley had not pleaded facts sufficient to demonstrate a waiver of immunity under the Tort Claims Act.[3] A ditch running along the roadway at the top of a T-intersection is not a special defect, it held, and any allegedly dangerous condition of the intersection resulted from discretionary design decisions, like the failure to place signs and barricades, for which the University retained its immunity.[4] We granted review.

## II

Governmental immunity generally deprives a trial court of subject-matter jurisdiction over suits against the government unless the state consents to the suit.[5] For certain claims for personal injuries, the Tort Claims Act waives governmental immunity.[6] Pertinent here, the Act waives immunity for claims alleging that an unreasonably dangerous condition of real property caused the plaintiff's injuries.[7] For

---

[2] This interlocutory appeal is permitted by Texas Civil Practice and Remedies Code Section 51.014(a)(8).

[3] ___ S.W.3d ___, 2021 WL 3282161, at *7 (Tex. App.—Amarillo July 30, 2021).

[4] *Id.*

[5] *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224–25 (Tex. 2004).

[6] *Id.*

[7] Tex. Civ. Prac. & Rem. Code § 101.021 ("A governmental unit in the state is liable for . . . personal injury and death so caused by a condition or use

an ordinary premises-defect claim, the Act waives immunity to the same extent that the governmental unit would, were it a private person, be liable to a licensee on private property.[8] The Act differentiates between ordinary premises-defect cases and those arising from a governmental unit's duty to warn of "special defects such as excavations or obstructions on highways, roads, or streets."[9] In special-defect cases, the government's duty is that of a private landowner to an invitee.[10]

The Act restricts its waiver of immunity to exclude certain types of premises-defect claims. Immunity is not waived for claims based on "a governmental unit's decision not to perform an act . . . if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit."[11] In particular, the Act retains immunity for claims based on a governmental unit's decision not to place a sign, signal, or warning device, unless the dangerous condition is a special defect:

(a) This chapter [waiving immunity] does not apply to a claim arising from:

(1) the failure of a governmental unit initially to place a traffic or road sign, signal, or warning device if the failure is a result of discretionary action of the governmental unit;

---

of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.").

[8] *Id.* § 101.022(a).

[9] *Id.* § 101.022(b).

[10] *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992).

[11] Tex. Civ. Prac. & Rem. Code § 101.056(2).

(2) the absence, condition, or malfunction of a traffic or road sign, signal, or warning device unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice; or

(3) the removal or destruction of a traffic or road sign, signal, or warning device by a third person unless the governmental unit fails to correct the removal or destruction within a reasonable time after actual notice.

. . . .

(c) This section does not apply to the duty to warn of special defects such as excavations or roadway obstructions.[12]

In responding to a jurisdictional plea, "the plaintiff must affirmatively demonstrate the court's jurisdiction by establishing a valid waiver of immunity."[13] We review de novo a challenge to the trial court's subject-matter jurisdiction based on a failure to demonstrate a waiver of governmental immunity.[14] Appellate review parallels that of summary judgment: a reviewing court should view the evidence in a light favorable to the nonmovant, indulging reasonable inferences from that evidence in the nonmovant's favor.[15] To avoid dismissal, a plaintiff must establish that jurisdiction exists as a matter of law or raise a fact issue that overcomes the jurisdictional challenge that is intertwined with the merits.[16]

---

[12] *Id.* § 101.060.

[13] *Gulf Coast Ctr. v. Curry*, 658 S.W.3d 281, 284 (Tex. 2022).

[14] *Miranda*, 133 S.W.3d at 226.

[15] *Id.* at 228; *see* Tex. R. Civ. P. 166a(c).

[16] *Miranda*, 133 S.W.3d at 221.

6

At the outset, Fraley observes that the University provided no evidence to counter the allegations in his pleadings. He argues that it is error for a reviewing court to consider evidence in a jurisdictional challenge based on the pleadings. In responding to the plea, however, Fraley provided two photographs of the scene and proffered some deposition testimony. In that testimony, Fraley's colleague said that the recent campus construction required those attending a training exercise to locate new paths to exit the campus, so participants were unfamiliar with the intersection where the accident happened.

When either party adduces evidence in connection with a jurisdictional plea, the trial court should consider that evidence in addition to challenges to the pleadings in confirming its jurisdiction.[17] Thus, we too examine the pleadings and the evidence to ascertain whether Fraley has alleged facts sufficient to establish a waiver of immunity.

## A

We first turn to the nature of the duty the University owed to Fraley. The duty imposed on a governmental premises owner depends in part on whether the alleged defect constitutes an ordinary defect or a special defect.[18] In addition, the Act carves out from its waiver of immunity premises claims based on the failure to place signs or signals in the first instance, except when the defect alleged is a special defect.[19]

---

[17] *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

[18] *See* Tex. Civ. Prac. & Rem. Code § 101.022.

[19] *Id.* § 101.060.

7

For an ordinary premises-liability claim, the governmental unit owes the duty that a private person would owe to a licensee.[20] The duty owed is the duty to warn the licensee of a dangerous condition or to make the condition reasonably safe, but only when the owner is aware of the dangerous condition and the licensee is not.[21]

When a plaintiff alleges a special defect, in contrast, the government's duty is expanded to the typical duty a private landowner owes an invitee.[22] Thus, for a special defect, the duty is to warn of an unreasonable risk of harm that the premises condition creates when the government owner knows or reasonably should know of that condition.[23] In addition to the heightened duty to warn, if an alleged defect is a special defect, then the limitation on the waiver of governmental immunity to exclude discretionary decisions about design, signage, and signals does not apply.[24] Whether a condition qualifies as a special defect is a question of law.[25]

**B**

The Tort Claims Act defines a special defect by listing examples: special defects include "excavations or obstructions on highways, roads, or streets."[26] In applying this definition, our Court has held that a

---

[20] *Id.* § 101.022(a).

[21] *Payne*, 838 S.W.2d at 237.

[22] *Id.* (citing Tex. Civ. Prac. & Rem. Code § 101.022(b)).

[23] *Id.*

[24] Tex. Civ. Prac. & Rem. Code § 101.060(c).

[25] *Payne*, 838 S.W.2d at 238.

[26] Tex. Civ. Prac. & Rem. Code § 101.022(b).

8

special defect must be "of the same kind or class" as excavations or obstructions.[27] Factors helpful to ascertaining whether a premises condition is a special defect include the condition's size, whether the condition unexpectedly impairs a vehicle's ability to travel on the road, or whether it presents an unexpected and unusual danger to ordinary users of the roadway.[28]

An ordinary roadway user follows the normal course of travel.[29] An ordinary user does not "careen uncontrollably off the paved roadway and into the adjoining grass."[30] An ordinary user does not "miss a turn and crash through a concrete guardrail."[31]

Fraley alleges that the ditch adjoining the roadway at the converted T-intersection presented a special defect.[32] Fraley does not, however, distinguish this ditch in kind or in character from many others that run along Texas roads at the top of T-intersections. He instead relies on the University's decision a month earlier to convert the intersection from a four-way intersection to a three-way intersection.

---

[27] *County of Harris v. Eaton*, 573 S.W.2d 177, 179 (Tex. 1978).

[28] *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010).

[29] *Denton County v. Beynon*, 283 S.W.3d 329, 332 (Tex. 2009).

[30] *Id.*

[31] *Tex. Dep't of Transp. v. Perches*, 388 S.W.3d 652, 656 (Tex. 2012).

[32] While Fraley pleads that the entire intersection constitutes a special defect, the only portion of the intersection that is in the nature of an excavation or an obstruction is the ditch.

A premises-defect claim examines the condition of the premises at the time of the alleged injury.[33] The University's earlier decision to convert the intersection does not change the nature of the premises or its condition on the night in question. While information about the construction of the intersection could inform whether a governmental unit complied with its duty of care, that information does not change the condition of this ditch from any other encountered by an ordinary user of Texas roads. The jurisdictional evidence indicates that Fraley had not traveled in this area of the campus before the accident.

Fraley further argues that the court of appeals erred in categorically excluding dangers on the side of the roadway from the types of defects that might constitute special defects under the Act.[34]

---

[33] *See City of Corsicana v. Stewart*, 249 S.W.3d 412, 415 (Tex. 2008) (holding that the City retained immunity because no evidence showed that the City had actual knowledge of flooding at the time of the accident; the City's awareness that the area flooded occasionally was insufficient).

[34] Fraley relies on two court of appeals decisions, *Harris County v. Estate of Ciccia*, 125 S.W.3d 749 (Tex. App.—Houston [1st Dist.] 2003, pet. denied), and *City of Houston v. Jean*, 517 S.W.2d 596 (Tex. App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.), to argue that the ditch in this case is a special defect. In *Ciccia*, the driver encountered a designated right turn lane, marked with striping, arrows, and the words "right turn only" on the surface of the road; these indicators directed the driver not to a right turn but into a ditch containing a concrete culvert. 125 S.W.3d at 752–53. The culvert was not part of the initial design but had been added later, with the County's permission, by a third party. *Id.* The court of appeals held that the County's immunity was waived for failure to warn of a special defect. *Id.* at 755. Because the driver in *Ciccia* followed the lane of travel as directed, the ditch in that case presented an excavation encountered on the roadway. In contrast, nothing alleged in this case directed Fraley to a continuing lane of travel beyond the T-intersection.

In *Jean*, the court of appeals considered a challenge to the sufficiency of the evidence and held that a jury reasonably could have found that a poorly

The statutory text, however, likens special defects to excavations or obstructions *on* roads.[35] While location is not determinative,[36] off-roadway obstructions are different in kind than those present *on* the roadway, as the statute expressly contemplates. Ditches and excavations are alike in that both are depressions in the ground's surface. An excavation on the road, however, presents a danger that drivers cannot avoid without altering their normal course of travel. A driver avoids a ditch adjacent to a roadway simply by remaining on the road.

Neither the pleadings nor the evidence demonstrates that the ditch in this case possessed an unusual quality that might impair an ordinary driver from following the roadway. Drainage ditches along the roadway—including alongside the top of T-intersections—are a common feature of many Texas roads. Ordinarily, a ditch adjacent to a roadway does not impair or obstruct the ordinary course of travel on the roadway.

---

lit T-intersection bordered by a ditch constituted a dangerous condition that triggered the City's duty to warn or protect drivers. 517 S.W.2d at 599. In a footnote in *Payne*, we cited *Jean* as one example of a court recognizing an off-road hazard as a special defect. 838 S.W.2d at 238 n.3. The point we made in that footnote, however, was that the location on or off the roadway is not dispositive of whether a condition is a special defect; rather, the pertinent question is whether the condition poses a threat to ordinary users of the roadway. *Id.* We later clarified as much in *Perches* when we concluded that the special-defect status of an off-road condition depends on whether the condition impedes travel for ordinary users of the road. 388 S.W.3d at 656.

[35] Tex. Civ. Prac. & Rem. Code § 101.022(b).

[36] *Payne*, 838 S.W.2d at 238 n.3.

11

Our decision in *Texas Department of Transportation v. Perches* informs this analysis.[37] In that case, an elevated highway ramp ended in a T-intersection; its signage directed drivers to turn left.[38] The driver failed to make the turn and instead drove through a concrete guardrail.[39] We determined that the guardrail was not a special defect because it did not pose a risk to ordinary users of the road; rather, it "became an impediment only when [the driver] missed his turn and proceeded off the road."[40] We emphasized that ordinary users of the roadway are expected to follow the normal course of travel.[41] Fraley, like the driver in *Perches*, deviated from the normal course of travel when he encountered the ditch.

Because ordinary users are not expected to travel beyond the surface of the roadway under the circumstances alleged,[42] we conclude that the ditch Fraley encountered when he left the roadway was not a special defect. Thus, the University owed a duty to Fraley as a licensee, and the Tort Claims Act's limitation to its waiver of governmental immunity for discretionary decisions about design and signage applies.

### III

The exclusion of discretionary decisions about design and signage precludes a waiver of governmental immunity in this case. The decision

---

[37] 388 S.W.3d 652.

[38] *Id.* at 653.

[39] *Id.*

[40] *Id.* at 656.

[41] *Id.*

[42] *See id.*

12

to redesign the intersection and place a yield sign—rather than a stop sign or some other signal—was discretionary, at least as an initial matter. The "[d]esign of any public work, such as a roadway, is a discretionary function," precluding a waiver of immunity under the Tort Claims Act.[43] This retention of immunity for discretionary design decisions extends to decisions about the installation of safety features.[44] Thus, immunity is not waived with respect to claims based on the University's initial omission of lights, barricades, or warning signs at the intersection. Instead, the Act expressly recognizes that the initial decision not to install traffic control devices cannot give rise to liability for a premises defect, unless that defect is a "special" defect.[45] We hold that the University's alleged failures to make the intersection safe fall within the well-recognized discretionary-function exception.[46]

Our decision in *Texas Department of Transportation v. Ramirez* involved allegations like Fraley's.[47] In *Ramirez*, we considered whether the Act waived the Department's immunity based on its alleged defective design of a narrow, sloped highway median that lacked barriers or guardrails.[48] The plaintiff presented evidence of earlier

---

[43] *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002) (alteration in original) (quoting *State v. Rodriguez*, 985 S.W.2d 83, 85 (Tex. 1999)).

[44] *Id.* (citing *State v. Miguel*, 2 S.W.3d 249, 251 (Tex. 1999)).

[45] Tex. Civ. Prac. & Rem. Code § 101.060(a)(1), (c).

[46] *Id.* §§ 101.056(2), .060(a)(1).

[47] 74 S.W.3d 864.

[48] *Id.* at 867.

accidents at that location and proffered an expert opinion that the median was not safe.[49] Despite this evidence, we concluded that the Act did not waive the Department's immunity because "the median's slope and the lack of safety features, such as barriers or guardrails, reflect discretionary decisions for which TxDOT retains immunity under the Act's discretionary-function exception."[50]

Like the plaintiff in *Ramirez*, Fraley similarly complains of the intersection's lack of safety features like lights, barricades, and warning signs. The decision to omit these features from the design of the intersection fell within the University's discretion. Absent a special defect, the Act's discretionary-function exception precludes a waiver of immunity based on such allegations.

Fraley further argues that, while design decisions are discretionary and excluded from the waiver of immunity, the University's negligent implementation of a planned design is not. He requests the opportunity to replead his case should additional discovery reveal facts demonstrating that the intersection's construction and safety features did not conform to its design plans. Fraley observes that the court of appeals, not the trial court, found his pleadings defective.

Negligent implementation is not a separate theory of liability under the Tort Claims Act. Instead, it is a means to avoid the Act's discretionary-function exception that would otherwise retain the

---

[49] *Id.*

[50] *Id.*

14

governmental unit's immunity from a premises-defect claim.[51] Fraley's third amended petition, however, neither alleges negligent implementation nor suggests that the University constructed the intersection inconsistently with its design decisions.[52] Fraley does not plead that the work done at the intersection was subpar, that existing safety measures were not properly maintained, or that the workmanship or materials of such measures were defective; he complains only about the intersection's design and the omission of safety features.

When a plaintiff fails to plead facts sufficient to demonstrate the trial court's jurisdiction, courts generally should afford the plaintiff the opportunity to replead unless "the pleadings affirmatively negate the existence of jurisdiction."[53] Once the defendant's jurisdictional plea gives notice of the jurisdictional defect, however, and the plaintiff responds with an amended pleading that "still does not allege facts that would

---

[51] *See City of San Antonio v. Maspero*, 640 S.W.3d 523, 533 (Tex. 2022) (noting the distinction between negligent-formulation-of-policy claims, which fall within the exception, and negligent-implementation claims, which do not).

[52] Even if the University's construction plan included additional signage or barriers that had not yet been installed, our holding in *City of Grapevine v. Sipes*, 195 S.W.3d 689 (Tex. 2006), precludes a negligent-implementation claim for the delayed installation of planned safety features. "*When* the [governmental unit] first installs a traffic signal is no less discretionary than *whether* to install it" for purposes of immunity under Section 101.060(a)(1). *Id.* at 694.

[53] *Miranda*, 133 S.W.3d at 226–27 (citation omitted); *accord Dohlen v. City of San Antonio*, 643 S.W.3d 387, 397 (Tex. 2022).

constitute a waiver of immunity," then the trial court should order the case dismissed with prejudice.[54]

Ordinarily, a claim based on faulty implementation of a design requires access to the design plans through appropriate discovery to consider whether an alleged premises defect was the result of negligent implementation, rather than negligent design. Fraley had that opportunity. Fraley filed four total petitions against the University alleging a premises defect, the last in response to the University's jurisdictional plea. The University raised the discretionary-function exception to the Act's waiver of immunity in its plea, and it argued that Fraley's alleged dangerous condition was not a special defect.

Twenty-two months passed between Fraley's original petition and the third amended petition filed in response to the University's jurisdictional plea. During that time, the parties conducted extensive discovery. Dozens of witnesses were deposed or responded to written questions. Fraley has not suggested that the University withheld requested information or refused to cooperate in discovery. Further, Fraley does not point to any discovery that reveals facts to avoid the discretionary decision-making exception to the waiver of immunity the Act provides. Given the opportunity to replead, Fraley did not raise

---

[54] *Harris County v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004); *see also Tex. Dep't of Crim. Just.–Cmty. Just. Assistance Div. v. Campos*, 384 S.W.3d 810, 815 (Tex. 2012) (holding that the case should be dismissed if, "after having a reasonable opportunity to conduct discovery directed to the issue and amend the pleadings," the plaintiff still fails to show facts overcoming the governmental unit's plea to the jurisdiction); *Matzen v. McLane*, 659 S.W.3d 381, 396 & n.18 (Tex. 2021) (noting that while the plaintiff did not seek to replead, we would deny such a request after three amended pleadings failed to invoke a waiver of sovereign immunity for ultra vires claims).

negligent implementation. Because Fraley neither claimed negligent implementation nor alleged facts to support it in pleadings filed after the jurisdictional plea and twenty-two months of discovery, we conclude that the court of appeals properly ordered the case dismissed rather than remanding to the trial court for repleading.

*      *      *

The Tort Claims Act excludes from its waiver of immunity those ordinary premises-defect claims based on the omission of "a traffic or road sign, signal, or warning device," when that omission "is a result of discretionary action of the governmental unit."[55] The court of appeals correctly concluded that the claims alleged in this case fall within this exclusion. Accordingly, we affirm its judgment.

Jane N. Bland
Justice

**OPINION DELIVERED:** March 24, 2023

---

[55] Tex. Civ. Prac. & Rem. Code § 101.060(a)(1).