

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-22-00307-CV

TEXAS DEPARTMENT OF TRANSPORTATION, APPELLANT

V.

DAVID P. SONEFELD, APPELLEE

On Appeal from the 153rd District Court
Tarrant County, Texas
Trial Court No. 153-290895-17, Honorable Susan H. McCoy, Presiding

December 21, 2023

## MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Is a four to six inch deep, six to seven inch wide, and up to two-hundred-foot-long separation in the road a special defect? Holding that such a separation is a special defect, we affirm the trial court's judgment.[1] Appellant, Texas Department of Transportation ("TXDOT"), presents two issues challenging the trial court's judgment in favor of Appellee, David P. Sonefeld. By its first issue, TXDOT argues a take-nothing judgment should be

---

[1] This is a premises liability action arising from a motorcycle accident in Tarrant County, Texas.

rendered because the lane separation at issue was not a special defect and Sonefeld failed to obtain a finding on one or more essential elements of an ordinary premises defect claim. By issue two, TXDOT argues there is no evidence of how long the condition existed in the state it was in at the time and place of the crash. We affirm.[2]

## BACKGROUND

On October 8, 2016, Sonefeld was driving his 2003 Honda motorcycle northbound in the 10700 block of South Freeway Service Road in Tarrant County, Texas when he encountered a separation between two lanes of travel as he changed from the outside lane to the inside lane to access the on ramp to northbound Interstate 35. The separation was six to seven inches wide, two to four inches deep, extended northward for some 100 to 200 feet, and sufficient to trap the tires on his motorcycle causing Sonefeld to fall over and sustain injuries.

After filing suit against TXDOT, Sonefeld moved for summary judgment contending the separation in the road between the two lanes of traffic is a special defect and, accordingly, TXDOT owed him a higher duty of care (the duty owed to an invitee) than that owed in a premises defect case (the duty owed to a licensee). The trial court granted Sonefeld's motion for summary judgment, and the case proceeded to a jury trial based upon the special defect. The jury returned a verdict for Sonefeld.

---

[2] Originally appealed to the Second Court of Appeals, this appeal was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001. Should a conflict exist between precedent of the Second Court of Appeals and this Court, this appeal will be decided in accordance with the precedent of the Second Court of Appeals. TEX. R. APP. P. 41.3.

**APPLICABLE LAW**

Generally, the State of Texas and its agencies retain sovereign immunity from suit unless the Legislature clearly and unambiguously waives it. *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 115 (Tex. 2010). The Texas Tort Claims Act waives sovereign immunity for personal injuries caused by a condition of real property. TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021(2), 101.025(a). If a plaintiff's claim arises from a premises defect, then the government's duty is generally limited to "the duty that a private person owes to a licensee on private property." *Id*. at § 101.022(a), (c). The duty owed is the duty to warn the licensee of a dangerous condition or to make the condition reasonably safe, but only when the owner is aware of the dangerous condition and the licensee is not. *Fraley v. Tex. A&M Univ. Sys.*, 664 S.W.3d 91, 98 (Tex. 2023) (citing *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992)).

But this limitation on the government's duty does not apply to the duty to warn of special defects, a subset of premises defects likened to excavations or obstructions on roadways. §§ 101.022(b), 101.060(c). For special defects, the government owes a duty to warn that is the same as a private landowner owes an invitee. *Fraley*, 664 S.W.3d at 96 (citing *Payne*, 838 S.W.2d at 237); *Hayes*, 327 S.W.3d at 116 (citing § 101.022(b)). Thus, for a special defect, the duty is to warn of an unreasonable risk of harm that the premises condition creates when the government owner knows or reasonably should know of that condition. *Id*. at 98 (citing *Payne*, 838 S.W.2d at 237). A premises-defect claim examines the knowledge of the landowner and the condition of the premises at the time of the alleged injury. *See City of Corsicana v. Stewart*, 249 S.W.3d 412, 415 (Tex. 2008).

3

**ISSUE ONE—IS THE LANE SEPARATION A SPECIAL DEFECT?**

**STANDARD OF REVIEW**

TXDOT's first issue challenges the trial court's summary judgment finding the lane separation was a "special defect." Whether the road condition in question is a "special defect" under the Texas Tort Claims Act is a question of law, and we review the trial court's determination de novo. *Hayes*, 327 S.W.3d at 116. A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim. *Robles v. Cox Ins. Grp.*, No. 02-21-00088-CV, 2022 Tex. App. LEXIS 407, at *4–5 (Tex. App.—Fort Worth Jan. 20, 2022, no pet.) (mem. op.) (citations omitted). Once the plaintiff produces evidence entitling it to summary judgment, the burden shifts to the defendant to present controverting evidence that raises a fact issue. *Id.*

**ANALYSIS**

The Texas Tort Claims Act does not define "special defect," but does give guidance by likening special defects to "excavations or obstructions." *Hayes*, 327 S.W.3d at 116 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(b); *County of Harris v. Eaton*, 573 S.W.2d 177, 178–80 (Tex. 1978)). To determine whether a condition is a special defect, the Texas Supreme Court has "considered characteristics of the class of special defect, such as (1) the size of the condition, (2) whether the condition unexpectedly and physically impairs a vehicle's ability to travel on the road, (3) whether the condition presents some unusual quality apart from the ordinary course of events, and (4) whether the condition presents an unexpected and unusual danger to the ordinary users of the

4

roadway." *Hayes*, 327 S.W.3d at 116 (citing *Tex. Dep't of Transp. v. York*, 284 S.W.3d 844, 847 (Tex. 2009)).

As part of his summary judgment evidence, Sonefeld attached the deposition excerpts from the testimony of several witnesses evidencing the characteristics and features of the lane separation, which we summarize here:

- Paul Ruscelli, an experienced motorcycle rider who worked at the church located opposite the scene of the accident and is familiar with the condition of the access road:

  - the lane separation ran down the center and was seven inches wide and three to four inches deep;

  - the separation is big enough to trap the front wheel of a motorcycle;

  - TXDOT has repaired the separation several times, but the separation recurred after each repair;

  - it is not a condition a motorcycle rider in Fort Worth would expect to encounter;

- Ram Gupta, a TXDOT assistant engineer, agreed the lane separation is a safety hazard which requires monitoring and repair;

- Ralph Garza, a TXDOT maintenance supervisor whose job duties includes maintenance of roadways inside Tarrant County:

  - there have been issues with the lane separation on the access road;

  - the road has to be monitored because of cracks and separation;

  - the road was "built many, many years ago" and susceptible to deterioration if it is not monitored and repaired;

  - in maintaining the road, all uses of the road are considered, including use by motorcycles;

5

- the lane separation presents a hazard for a motorcycle;

- Justin Derden, a maintenance crew chief for TXDOT who worked on the access road where the lane separation was located, confirmed the lane separation could cause a problem for a motorcycle;

- Santos Reco Chazerreta, Jr., an assistant maintenance supervisor with TXDOT for 36 years who lives in the area and is familiar with the road where the lane separation was located:

  - TXDOT monitors the roadway at least once a month;

  - the road was designed to be maintained through patching and "hot mix" treatments regularly;

  - the road was originally constructed before Chazerreta was born;

  - the lane separation is a "problem area" worse than other "longitudinal joint separations" he has seen;

  - the separation is the worst in the Tarrant County area;

  - the reason "joint separations" like the lane separation are repaired/treated is because they present hazards to users of the roadway;

- Jeffrey Milburn, a licensed professional engineer and traffic engineer hired by TXDOT as an expert witness, stated he has never seen a "longitudinal separation" wider than the separation encountered by Sonefeld;

- Faisal Abdel-Qader, a licensed professional engineer employed by TXDOT for the Fort Worth District:

  - a gap six to eight inches wide and three to four inches deep

    - requires immediate repair,

    - can impede a motorcyclist from changing lanes, and

    - is an unexpected condition for an ordinary user of the roadway;

  - roadways are designed with motorcycles as anticipated users;

- the access road with the lane separation was designed at least as far back as 1972 and the design of the road and the way in which it was constructed, combined with increased use, weight of vehicles, and population growth, has caused the lane separation and deterioration;

- a three or four-inch gap is an issue for motorcycles, depending on tire size, and a six or eight-inch gap, "even for [] cars, would be hazardous";

- David P. Sonefeld, Appellant, an experienced motorcycle rider who, until this incident, did not have an accident:

    - there were no mechanical or other issues with the motorcycle which would have caused the accident;

    - the weather was clear on the day of the accident, with no rain or other inclement weather which could have been a factor in the accident;

    - he was unfamiliar with the road where the accident occurred;

    - the accident occurred as he made a lane change to enter the onramp onto the freeway;

    - he did not see the lane separation before the accident; and

    - the disruption of the motorcycle was so jarring and severe, he was disoriented and briefly lost consciousness.

In addition, Sonefeld attached pictures of the lane separation introduced during the depositions. Under the *Hayes* factors:

(1) the lane separation was seven inches wide and three to four inches deep running down the middle of the access road between the lanes for an appreciable distance before the entrance ramp to I-35;[3]

---

[3] Sonefeld did not introduce any summary judgment evidence regarding the length of the separation. But TXDOT, in its response, attached and incorporated into its facts the police report from the accident, which states "there is a very long groove between [the lanes] that is several inches wide and several inches deep." TXDOT also attached and incorporated into its facts Sonefeld's original petition, which described the lane separation as "a very long excavated area" and "extended for some distance down the road."

7

(2) the lane separation can suddenly, unexpectedly, and physically impair a motorcycle's ability to travel by trapping the tires of the motorcycle;

(3) the lane separation is unusual because it requires frequent repair; is on a road over fifty years old which was not designed for the current amount of traffic or population; and is the worst such lane separation in the Tarrant County area; and

(4) the separation presents an unexpected and unusual danger to motorcyclists, who are ordinary users of the roadway, and, as demonstrated by Sonefeld's own experience, can cause severe injuries requiring emergency care.

The characteristics of the lane separation are similar to an "excavation," and the evidence weighed by the *Hayes* factors leads us to conclude the lane separation was a "special defect" under the Texas Tort Claims Act. *See e.g., Morse v. State*, 905 S.W.2d 470, 475–76 (Tex. App.—Beaumont 1995, writ denied) (six inch drop off at the side of the road prevented vehicle's tires from coming back onto the road after leaving it a special defect); *Tex. Dep't of Transp. v. Ramirez*, 566 S.W.3d 18, 24–25 (Tex. App.—San Antonio 2018, pet. denied) (shoulder drop-off three times larger than permitted by TXDOT manual and preventing car from coming back onto road a special defect).

Sonefeld conclusively proved the lane separation was a "special defect" under the Texas Tort Claims Act. Thus, the burden then shifted to TXDOT to present issues precluding summary judgment in his favor. *Supra.*

TXDOT does not dispute the above evidence, and the only additional evidence it offered was a copy of Sonefeld's original petition and a copy of the police report of the accident, which do not contradict Sonefeld's evidence. Rather, on appeal, TXDOT suggests Sonefeld's evidence is insufficient as a matter of law to conclusively establish the lane separation was a special defect for the following reasons:

8

- the separation did not physically impair the ability to travel down the road because Sonefeld could have avoided it;

- Sonefeld could have negotiated the separation by driving at a steeper angle; and

- the separation only poses a danger to motorcyclists and therefore does not pose a danger to "ordinary users of the roadway."

Of the above arguments, however, the only one TXDOT presented to the trial court in response to Sonefeld's motion for summary judgment was Sonefeld could have avoided the lane separation. "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." TEX. R. CIV. P. 166a(c). "A non-movant must present its objections to a summary[-]judgment motion expressly by written answer or other written response to the motion in the trial court or that objection is waived." *Zemos Logistics, LLC v. BKT Enters.*, No. 02-23-00049-CV, 2023 Tex. App. LEXIS 9191, at *16 (Tex. App.—Fort Worth Dec. 7, 2023, no pet. h.) (mem. op.) (quoting *D.R. Horton-Tex., Ltd., v. Markel Intern. Ins. Co.,* 300 S.W.3d 740, 743 (Tex. 2009)). An issue not raised in a summary-judgment response remains waived on appeal even if the non-movant subsequently raised it in a motion for new trial. *Id.* (citing *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 467 (Tex. 1998)). Having failed to argue in its summary judgment response Sonefeld could have traveled over the separation or that motorcycles are not "ordinary users of the roadway," TXDOT waived those arguments for consideration on appeal.[4]

---

[4] TXDOT's argument regarding motorcycles not being "ordinary users of the roadway," even if we were to consider it, is without merit. Motorcycles are well-regulated vehicles which are entitled to share the road with other vehicles in Texas, and therefore they are necessarily "ordinary users of the roadway." *See* TEX. TRANSP. CODE ANN. §§ 502.001 et seq.; 521.001 et seq.; 541.001 et seq. As such, a condition presenting an unexpected and unusual danger to motorcycles is also a danger to "ordinary users of the road" and may constitute a special defect within the meaning of the Act.

9

For its preserved argument, the separation could be avoided, TXDOT relies exclusively on *City of Denton v. Paper*, 376 S.W.3d 762 (Tex. 2012) for this proposition. In *Paper*, the City of Denton excavated a portion of a street in order to install a sewer line and repaired the hole after the installation. The repair created a hole in the middle of the street with a depth equal to the length of a pencil just below the street's surface. Later, a bicyclist rode over the hole and lost control of her bike causing her injury. She sued Denton for negligence alleging the duty owed under a special defect. Following discovery, Denton filed a mixed motion for summary judgment based on: (1) the condition was not a special defect; and (2) the bicyclist knew of the condition. The trial court's denial of the summary judgment was affirmed on appeal, but the Texas Supreme Court reversed after determining the repair did not create a "special defect" under the Texas Tort Claims Act. In making its determination, the Texas Supreme Court examined the class of defects similar to "excavations and obstructions" and noted "[i]t does not include common potholes or similar depressions in the roadway." *Id*. at 766. The Court determined the defect was more akin to a pothole, and it was not so large the bicyclist did not have enough room to safely avoid it without going into the other lane of oncoming traffic.[5] TXDOT concluded in its response because Sonefeld "could very easily [have] avoided the joint separation between lanes without moving into the other lane of traffic, and thus the joint separation was not a special defect."[6]

---

[5] The bicyclist admitted she did not pay attention to the road immediately ahead of her, but instead focused on the stop sign at the end of the street, and thus accidentally steered her bicycle into the "pothole." *Id*.

[6] In further support of its argument, on appeal, TXDOT cites the trial testimony of Jeffrey Milburn, who testified there were 1,400 feet between the intersection and the onramp in which Sonefeld could have avoided the separation. This evidence was not before the trial court during the summary judgment, and we may not consider it now. *Supra*.

Unlike the defect in *Paper*, however, here the defect is in the middle of the road, and is an impediment to a motorcyclist, an "ordinary user of the roadway," who wishes to change lanes. Whereas the "pothole" in *Paper* was in the middle of the lane, but with enough space for the bicyclist to move around it, there is no way for a motorcyclist to avoid the lane separation if he has to make a lane change. TXDOT argues Sonefeld could have avoided the lane separation by simply choosing not to change lanes. The problem with TXDOT's reasoning is the road where the separation is located is a busy access road next to I-35, and TXDOT cannot predict when and where drivers will make lane changes. Depending on traffic conditions, there are myriad reasons why a motorcyclist would be forced to make a lane change at the site of the separation, and simply avoiding it may not be an option due to other safety concerns.

Issue one is overruled.

## ISSUE TWO—NO EVIDENCE TXDOT KNEW OF THE DANGER

### STANDARD OF REVIEW

TXDOT's second issue challenges the legal sufficiency of the evidence supporting the jury's verdict.[7] In a legal sufficiency challenge, we consider all the evidence in the light most favorable to the prevailing party, make every reasonable inference in that party's favor, and disregard contrary evidence unless a reasonable factfinder could not

---

[7] TXDOT filed a motion for judgment notwithstanding the verdict, and preserved its legal sufficiency challenge; however, it failed to file a motion for new trial, and therefore waived its factual sufficiency challenge. *See Int. of D.T.*, 625 S.W.3d 62, 75 (Tex. 2021) (citing TEX. R. CIV. P. 324(b)(2); *Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (Tex. 1985)). Accordingly, we construe its pleadings based on "no evidence" as only a legal sufficiency challenge to the jury's verdict. *See generally City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005) (traditionally, legal sufficiency challenges were "no-evidence points").

11

disregard that evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). A legal sufficiency challenge may only be sustained when the record discloses (a) a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence, or (d) the evidence conclusively establishes the opposite of the vital fact in question. *Id.* at 810. Evidence does not exceed a scintilla if it is so weak as to do no more than to create a mere surmise or suspicion that the fact exists. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). A party challenging the legal sufficiency of an adverse finding on an issue on which it did not have the burden of proof must demonstrate that there is no evidence to support the adverse finding. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011).

## ANALYSIS

TXDOT argues the evidence presented at trial was insufficient to demonstrate the lane separation "existed for long enough for [TXDOT] to (1) reasonably discover the existence of the condition and (2) make the condition reasonably safe." We disagree.

In special-defect cases, the government's duty is that of a private landowner to an invitee. *Fraley*, 664 S.W.3d at 96 (citing *Payne*, 838 S.W.2d at 237). Generally, a premises owner has a duty to an invitee to exercise reasonable care to either "make safe or warn against any concealed, unreasonably dangerous conditions of which the [premises owner] is, or reasonably should be, aware but the invitee is not." *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 203 (Tex. 2015). TXDOT argues Sonefeld put forth

12

no evidence of the duration of the lane separation's existence at trial and has pointed to no such evidence on appeal. TXDOT claims there is no evidence to support a finding on constructive knowledge.

Constructive knowledge may be proven via the "time-notice rule," which allows knowledge to be imputed to an owner after a reasonable period of time passes to discover and remedy the defect. *See Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 816 (Tex. 2002). What amounts to a reasonable opportunity for discovery depends on the circumstances, including, proximity, conspicuity, and longevity of the defect. *See id.; Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 567–68 (Tex. 2006). In a narrow category of cases, knowledge may otherwise be inferred even absent a sufficient showing of actual or constructive notice. Under *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292 (Tex. 1993), the requirement may be satisfied by knowledge of the risk of "foreseeable harm from some course of conduct or method of operation," rather than "knowledge of one specific hazard." *See id.* at 296; *Keetch v. Kroger Co.*, 845 S.W.2d 262, 265 (Tex. 1992). Sonefeld argues this case fits into this narrow category. We agree with Sonefeld.

A trial, Sonefeld's attorneys played the video of the depositions of several witnesses for the jury, including Santos Reco Chazerreta, Jr., the aforementioned assistant maintenance supervisor for TXDOT, who was responsible for the repair of the access road where the lane separation was located. In the video played for the jury, he testified:

- "It's not a big pothole. It's a gap that opened up";
- "It opens, closes a bit, opens and closes because of the design";

13

- "I've been here 36 years, and I hate this road right here from point A to point B . . . it's an engineering issue, if you ask me, when the road was designed";

- "I mean, that's not a repair that we can do. I mean, the road was built like that from the '50s or '40s, whenever it was built. So basically we would just monitor this";

- he does not consider the patching/filling of the lane separation a "repair" because "it's winter/summer cracks open up, they close. And like I said, that's been there awhile";

- "I hate repeating myself about that but, you know, I've been here 36 years, seen a lot of road, and this one really chaps my you-know-what";

- "We monitor this roadway";

- "Every road we have, though, is subject, you know, to us checking it every day";

- the condition presents a risk to motorcycles;

- the condition has been there for the 36 years he has worked for TXDOT; and

- the portion of the road where the accident occurred is the worst lane separation he has seen in the Tarrant County area.

Chazerreta's supervisor, Rafael Garza, also testified the condition has to be monitored because it presents a hazard, and TXDOT's repairs of any condition considers making it safe for all types of vehicles, including motorcycles. TXDOT's two engineers, Ram Gupta and Faisal Abdel-Qader, agreed the condition presents an unacceptable hazard to motorcycles, and possibly cars as well. Paul Ruscelli, who had been working at the church opposite the site of the accident for eighteen months at the time, witnessed TXDOT fill in the lane separation several times and the separation opening up again after each treatment. Finally, Justin Derden, the TXDOT equipment operator who assisted in

14

performing the repair after the accident, appeared at trial and testified the lane separation was a defect the traveling public should not expect to encounter and presented a "risky condition, it could be dangerous."

Viewing the evidence in the light most favorable to the verdict, there is more than a scintilla of evidence TXDOT knew of the risk of foreseeable harm from the defect, if not specific knowledge of existence of the defect on the day of the accident:

- TXDOT knew about the defect for decades before the accident;

- its employees determined the condition to be unsafe, and continually attempted to repair/remedy it through patching and filling in the separation;

- its employees knew the repair/remedy treatment was temporary;

- the road was poorly designed when it was built decades ago;

- the road was monitored a month before the accident;

- the road is subject to being checked every day.

In this case, the evidence fits squarely within the *Corbin* rubric. The defect had been occurring for years, is a seasonal occurrence, and TXDOT's employees knew and understood the measures they employed to remedy the lane separation were temporary at best. The roadway requires and has constant monitoring. Chazerreta confirmed TXDOT employees were in the area of the lane separation on the access road in September 2016, but a repair was not initiated until two weeks after the accident in late October 2016. The jury had sufficient evidence to infer the lane separation "existed for long enough for [TXDOT] to reasonably discover the existence of the condition and make the condition reasonably safe."

15

Issue two is overruled.

## CONCLUSION

The trial court's judgment is affirmed.


Alex Yarbrough
Justice